# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 12-60841

United States Court of Appeals
Fifth Circuit

**FILED**

January 24, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

BRIAN ROBINSON,

Defendant–Appellant

Appeal from the United States District Court
for the Northern District of Mississippi

Before SMITH, PRADO, and ELROD, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Defendant–Appellant Brian Robinson was convicted of producing, possessing, and distributing child pornography. He challenges the district court's denial of his motion to suppress evidence and his 720-month sentence. We affirm the denial of his motion to suppress, but vacate his sentence and remand for resentencing because the district court did not appreciate its authority to consider evidence of Robinson's cooperation under 18 U.S.C. § 3553(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2010, federal investigators discovered images of child pornography in a suspect's possession. Two sets of images were sent over the internet in June

and July 2010 by a person using the username "lowkey" on the instant messaging service ICQ. Information embedded within the images indicated that the sets of images had been taken on May 20, 2008, and January 26, 2009. Investigators obtained subscriber information and Internet Protocol ("IP") logs related to the "lowkey" account. Investigators further determined that the account had been accessed numerous times from a particular IP address assigned to Accurate Roofing Company, Inc. ("Accurate Roofing") in Potts Camp, Mississippi.

In March 2011, investigators obtained a search warrant for Accurate Roofing. Prior to serving this search warrant at Accurate Roofing, investigators determined that the child in the images was the young son of Brian Robinson, who was a vice-president of Accurate Roofing. Based on the original affidavit and the additional information identifying Robinson's son, investigators also obtained a search warrant for Robinson's home. At Accurate Roofing, investigators found a computer and a separate thumb drive that contained a combined 260 images of child pornography and 19 videos of child pornography. They also discovered evidence that Robinson's workplace computer had been used to access the "lowkey" account. At his residence, agents found clothing, household items, and furniture that appeared in the pornographic images.

Robinson initially agreed to speak with investigators; however, when he was asked how images of his son had come to be on another person's computer, Robinson stopped the interview. He was arrested on state charges of child exploitation. The next day, after being advised of his rights, Robinson gave a full recorded confession. He admitted that the "lowkey" account was his and that he had sent images of his son to other persons using that account. Robinson was indicted on two counts of production of child pornography (18

U.S.C. § 2251(a)), two counts of distribution of child pornography (18 U.S.C. § 2252A(a)(1)), and one count of possession of child pornography (18 U.S.C. § 2252A(a)(5)(B)).

Robinson moved to suppress the evidence obtained through the searches of his workplace and home as well as his statement to investigators. He argued that the affidavit submitted in support of the warrant to search Accurate Roofing "failed to establish a nexus between the place to be searched and the evidence sought" because it failed to disclose both that other IP addresses had accessed the "lowkey" account and that investigators did not know which IP address had accessed the account at the time the images were transmitted. As for the affidavit in support of the warrant to search his residence, Robinson argued that the affidavit failed to assert that the household items seen in the images were still in the residence when the search warrant was sought in 2011. Finally, because he had invoked his right to counsel the day before he gave his incriminating statement to investigators, Robinson argued that his statement should be suppressed. The district court denied the suppression motions after an evidentiary hearing.

Pursuant to a conditional plea agreement, Robinson pleaded guilty to one count of production of child pornography, one count of distribution of child pornography, and one count of possession of child pornography. He reserved the right to appeal the denial of his motions to suppress. *See* Fed. R. Crim. P. 11(a)(2).

The presentencing report ("PSR") calculated a total offense level of 43. Because Robinson had no criminal history, his criminal history category was I. These calculations resulted in a guidelines range of imprisonment for life. However, the sum of the statutory maximum sentences for each count of conviction was 720 months, making this the guidelines sentence. Robinson

filed a sentencing memorandum,[1] which, in relevant part, requested a lower sentence based on his cooperation with investigators in at least two other cases.

At sentencing, Robinson urged the district court to consider his cooperation with authorities when considering the sentencing factors of 18 U.S.C. § 3553(a)(2). The district court adopted the PSR; stated that it had considered the advisory guidelines range, the statutory ranges, and the sentencing factors of § 3553(a); and found no reason to depart from the guidelines range. Robinson was sentenced to a total of 720 months of imprisonment.[2] Addressing his cooperation with authorities, the district court "acknowledge[d]" those efforts, but it stated that "it does you no good for the purposes of sentencing in that the Court does not have before it a [U.S.S.G. §] 5K[1.1] motion to consider." The district court further stated that it was a "moot question" whether Robinson would have received a reduction under § 5K1.1 because the Government had chosen not to file such a motion. The district court represented that it was not considering all the § 3553(a) factors:

> I represent on the record that if the Court were to consider those [§ 3553] factors, it would not have helped Mr. Robinson at all in his sentence because when the Court considers the nature and circumstances of this offense [it] finds that there is no reason when [sic] he would be entitled to any reduction due to this charge of molesting his child, his own son, and distributing pornography of his son.

---

[1] Robinson filed one objection to the guidelines calculations regarding grouping of the counts, but both he and the probation officer agreed that the resolution of this objection would not affect the final offense level.

[2] An amended judgment was filed several months later, after no victims requested restitution.

No. 12-60841

The district court reiterated this statement: "If I considered all the factors under [§] 3553 . . . the Court would still be of the opinion that a 720-month sentence is appropriate in this case."  Robinson unsuccessfully objected that the sentence imposed was substantively unreasonable.  He filed a timely notice of appeal from the amended judgment.

## II.  DISCUSSION

Robinson appeals (1) the district court's denial of his motions to suppress the evidence seized from Accurate Roofing and from his residence and (2) the procedural and substantive reasonableness of his sentence.  We first address Robinson's suppression challenge.

### A.  Suppression

#### 1.  Standard of Review and Applicable Law

When reviewing a denial of a motion to suppress evidence, this Court reviews factual findings for clear error and the ultimate constitutionality of law enforcement action de novo.  *United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006).  The clearly erroneous standard is particularly deferential where, as here, "denial of a suppression motion is based on live oral testimony . . . because the judge had the opportunity to observe the demeanor of the witnesses." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (citation and internal quotation marks omitted).

We apply a two-step test to determine whether to suppress evidence under the exclusionary rule: first, we ask whether the good faith exception to the rule applies, and second, we ask whether the warrant was supported by probable cause.  *United States v. Mays*, 466 F.3d 335, 342–43 (5th Cir. 2006) (citation omitted).  The good faith exception to the exclusionary rule provides "that evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible" even if the

affidavit on which the warrant was grounded was insufficient to establish probable cause. *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997) (citation and internal quotation marks omitted).

This Court has recognized several circumstances in which the good faith exception does not apply, including where the judge who issued the warrant acted after being "misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," or the affidavit upon which the warrant is founded is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Mays*, 466 F.3d at 343 (citation and internal quotation marks omitted).

## 2. Search Warrant for Accurate Roofing

Immigration and Customs Enforcement Special Agent Brent Lyons prepared the affidavit in support of the search warrant for Accurate Roofing. The affidavit alleged that the IP address assigned to Accurate Roofing "was utilized to transfer images of child pornography via the Internet by using an online instant messaging chat program in approximately June and July 2010." It also stated that investigators had learned the IP address most recently used (on December 15, 2010) to log in to the "lowkey" account was assigned to Accurate Roofing and that IP addresses assigned to Accurate Roofing had been used to log in to the "lowkey" account on multiple other (unspecified) dates.

Agent Lyons testified at the suppression hearing. He stated that investigators had requested six months of login data for the "lowkey" account, but the internet service provider could provide only approximately three months of data. He acknowledged that the records the investigators received did not include login data for June and July 2010, when the subject images had been transmitted, and that this fact had not been included in the warrant

application or supporting affidavit.  However, Agent Lyons asserted that, for the period covered by the records, "almost all" of the logins to the "lowkey" account had been from IP addresses associated with Accurate Roofing.  In particular, he stated that, of the approximately sixty logins to the "lowkey" account between October and December 2010, all but "five [or] six" came from IP addresses associated with Accurate Roofing.

In rejecting Robinson's motion to suppress the evidence seized from Accurate Roofing, the district court found that there were no records available to show what IP address had logged in to the "lowkey" account at the time the subject images were transmitted.  However, it also noted that the records provided showed "multiple matches for the log-in to the ICQ Lowkey account and the IP address assigned to Accurate Roofing during the October through December time period."  The district court concluded that, at the time the warrant application was made, the investigators "had sufficient, reliable information to believe that . . . the IP address assigned to Accurate Roofing was being utilized for these transmissions" and that, therefore, "there was a sufficient nexus" between the location and the evidence sought.  The district court also found that, even if the affidavit had included the information that the "lowkey" account had been accessed from other IP addresses, this "would not have negated a finding of probable cause" and that there was still "sufficient evidence to support a finding of probable cause"; it also concluded that, while the omission of this information may have been negligent, it was not "intentional or in reckless disregard."

Robinson argues that the good faith exception does not apply because the affidavit in support of the warrant application for Accurate Roofing was misleading and omitted important information.  He asserts that the affidavit failed to disclose that the available records for the "lowkey" account dated back

only to October of 2010, several months after the subject images were sent.  He also asserts that the affidavit failed to disclose that these records showed that the "lowkey" account had been accessed by other IP addresses not associated with Accurate Roofing.  Robinson argues that these "omissions in the affidavit made it falsely appear" that the evidence showed that an IP address associated with Accurate Roofing had sent the subject images in June and July 2010.  In response, the Government argues that these omissions were not dispositive.  It notes that the district court found that, even if the information about logins from other IP addresses had been included in the affidavit, this would not have negated the finding of probable cause.

To defeat the good faith exception, a movant must not only show that there was a knowing or reckless falsehood; he must also show "that without the falsehood there would not be sufficient matter in the affidavit to support the issuance of the warrant." *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000).  The omitted material must be "information that is not only relevant, but dispositive, so that if the omitted fact were included, there would not be probable cause." *Id.*

The district court did not err in finding that this evidence was not dispositive, because, even if the omitted information had been included in the affidavit, there would still have been probable cause for the issuance of a search warrant.  *See id.*  The affidavit stated that the "lowkey" account had most recently been accessed from an IP address assigned to Accurate Roofing.  Investigators had determined that this same IP address had been used to login to the "lowkey" account on multiple other occasions.  Thus, even if the affidavit had acknowledged that agents did not have records for the specific dates when the images were transmitted, these facts would still establish a "fair probability that contraband or evidence of a crime" would be found at that

location.  *See id.* (stating that movant must show that, if the omitted fact was included, there would not have been probable cause).  Likewise, the fact that several logins to the "lowkey" account came from IP addresses not associated with Accurate Roofing would not be dispositive because most of the logins did come from that location.

Accordingly, we affirm the denial of Robinson's motion to suppress evidence seized pursuant to the search warrant of Accurate Roofing.

**3.  Search Warrant of Residence**

Robinson also appeals the district court's denial of his motion to suppress evidence obtained pursuant to the search warrant of his residence.

Special Agent Lyons also prepared the affidavit in support of the warrant to search Robinson's residence.  It repeated the statements that an IP address associated with Accurate Roofing had been used to log in to the "lowkey" account.  It also stated that date stamps on the subject images showed they had been taken in May 2008 and January 2009 and that investigators had determined that the child in the images was Robinson's son.  The affidavit asserted that public records indicated that the home address of Robinson was the subject premises.  The affidavit concluded that there was therefore probable cause to believe that the residence would contain evidence of the creation of the images, such as cameras, computers, and the clothing and household furnishings seen in the images.

During a telephonic hearing to consider the warrant application, Agent Lyons informed the magistrate judge that investigators had traced the subject images back to an IP address assigned to Accurate Roofing, that the child in the images had been identified as Robinson's son, and that Robinson worked at Accurate Roofing.  He also asserted that the images, depicting a bedroom and a bath tub, appeared to have been taken at a home.  Agent Lyons said that

investigators believed that Robinson's son lived at the residence with Robinson.  He stated that agents intended to search for any digital media that could contain child pornography, as well as clothing, bedding, and household items that were visible in the images.  At the subsequent hearing on Robinson's motion to suppress, Agent Lyons acknowledged that the affidavit did not specifically assert that Robinson or his son lived at the residence at the time the images were taken or that any of the items seen in the image were still at the residence.

The district court found that the date that the images were taken, more than two years prior to the search, did not render them stale information, unable to support probable cause.  In particular, the district court noted that caselaw suggested that, especially in child pornography cases, older information still may be reliable because of techniques allowing for the later electronic retrieval of evidence and the fact that child pornography is usually carried out in the secrecy of the home.  The district court also concluded that, "once there was a search of the business and an identity that the victim in the child pornography was the son of Mr. Robinson, then certainly there was reason to believe that items of clothing and property could be found at the home that would substantiate the likelihood that the photographs were taken in the home of the defendant."

Challenging the district court's suppression ruling, Robinson makes two arguments: first, that the affidavit was "bare bones" because it depended on dated—i.e., "stale"—information on which an officer could not reasonably rely; and, second, the affidavit was otherwise lacking in indicia of probable cause because there was not a sufficient nexus between the place to be searched and the evidence to be seized, such that the good faith exception should not apply. Robinson states that the supporting affidavit contained no information

indicating that he or his son had lived at his current residence when the images were taken in May 2008 and January 2009.  He asserts that the affidavit failed to establish a nexus between the evidence sought and the place to be searched.  He also asserts that the affidavit contained no information indicating that it was likely that the clothing or household items visible in the images would be present more than two years later.

An officer is not entitled to invoke the good faith exception if the affidavit upon which the warrant is founded is a "bare bones" affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Mays*, 466 F.3d at 343 (citation and internal quotation marks omitted).  A "bare bones" affidavit contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause."  *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992) (citation omitted).  Whether an affidavit is a bare bones affidavit is determined by a totality of the circumstances.  *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994).

Stale information cannot be used to establish probable cause.  *Marcilis v. Twp. of Redford*, 693 F.3d 589, 601 (6th Cir. 2012).  When evaluating the staleness of information in an affidavit, this Court considers the particular facts of the case, including the nature of the unlawful activity and of the evidence sought, especially whether the evidence "is of the sort that can reasonably be expected to be kept for long periods of time in the place to be searched."  *United States v. Craig*, 861 F.2d 818, 822–23 (5th Cir. 1988).

Here, we hold that the information in the affidavit was not so stale that it rendered the affidavit a "bare bones" affidavit.  In other child pornography cases, this Court and others have found that similarly old information is not stale for establishing probable cause.  *See United States v. Allen*, 625 F.3d 830,

843 (5th Cir. 2010); *see also United States v. Paull*, 551 F.3d 516, 522–23 (6th Cir. 2009) (information that the defendant subscribed to child pornography thirteen months earlier was not stale); *United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) ("Information a year old is not necessarily stale as a matter of law, especiall where child pornography is concerned." (citations omitted)); *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (upholding search warrant in pornography case based on ten-month-old information).  Relevant to this inquiry is the fact that evidence of child pornography often is found in the secrecy of a defendant's home and the criminal activity is carried out over a long period.  *See Allen*, 625 F.3d at 843 (citing *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009)).

In addition, Robinson alleges that there was not a sufficient nexus connecting the child-pornography activity to his residence.  The requisite nexus between the location to be searched and the evidence sought can be shown by "direct observation" or by "normal inferences as to where the articles sought would be located." *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003) (citation and internal quotation marks omitted).  The issuing judge may "draw reasonable inferences from the material he receives," and the ultimate determination of the affidavit's adequacy is entitled to great deference on review. *United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987).

Even though the affidavit failed to assert that Robinson or his son still lived at the same location as when the images were taken and failed to allege that any of the items visible in the images were still at his residence several years later, the information had sufficient indicia of probable cause that an officer in good faith could rely on it.  Even if Robinson could have moved to a different address after taking the images, it would be a reasonable inference that evidence of the production, distribution, or possession of child

pornography might be found at Robinson's current residence. In addition, it would be a "normal inference" to conclude that Robinson and his son lived at the same residence at the time the photographs were taken and that, because the images appeared to have been taken in a home, the household items visible in the background, the victim's clothing, or even the camera used to take the images, would be located at their current residence even if Robinson and his family had moved after the images were taken. *See Payne*, 341 F.3d at 400 (stating that the required nexus may be established by "normal inferences as to where the articles sought would be located"). Accordingly, we hold that the district court did not err when it concluded that the information was sufficient to entitle the officer to invoke the good faith exception.

In sum, we affirm the district court's denial of Robinson's motion to suppress evidence obtained pursuant to both search warrants. Robinson's arguments that the good faith exception does not apply are unavailing. Robinson is unable to prove that the withheld information regarding IP addresses was dispositive to the probable cause determination for the Accurate Roofing search warrant. Robinson is also unable to show that law enforcement could not reasonably rely on the search warrant for his residence. The district court did not err in determining that the information used to establish probable cause was not stale, given the nature of the offense.

**B. Sentencing**

Robinson raises two issues with regard to his sentence. First, he contends that the sentencing court committed procedural error by failing to appreciate that it had discretion to consider his cooperation with the Government under 18 U.S.C. § 3553(a). Second, he contends that his sentence of 720 months is substantively unreasonable.

No. 12-60841

**1. Standard of Review**

This Court reviews a district court's sentencing decision in two steps. First, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, [or] failing to consider the § 3553(a) factors." *United States v. Cisneros–Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). This Court applies harmless error review to any procedural error. *United States v. Neal*, 578 F.3d 270, 274 (5th Cir. 2009). Second, if the sentence is procedurally sound or if the procedural error is harmless, this Court "consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* at 273 (citation and internal quotation marks omitted). In applying this two-step review, this Court reviews the sentencing court's interpretation or application of the Sentencing Guidelines de novo, and its factual findings for clear error. *Id.*[3]

For the reasons below, we hold that the sentencing court's failure to appreciate its discretion to consider Robinson's cooperation was a procedural error and was not harmless. Therefore, we remand to allow the court to exercise its discretion to consider evidence of cooperation under § 3553(a).[4]

---

[3] Robinson sufficiently preserved his procedural error issue by arguing in his sentencing memorandum that the district court should impose a reduced sentence in light of his cooperation, despite the Government's decision to not file a § 5K1.1 motion. "To preserve error, an objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). By asserting in his sentencing memorandum that the district court should consider his cooperation, even in the absence of a § 5K1.1 motion, Robinson preserved the issue for appeal. *See id.* at 272–73 (finding defendant's written objection to PSR sufficiently preserved that issue for appeal, even if he did not object when district court misconstrued it).

[4] We do not reach the issue of whether the sentence is substantively unreasonable.

## 2. Procedural Error

Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), sentencing courts must conduct a two-part process—first calculating the sentence using the now-advisory Sentencing Guidelines, then applying an individualized assessment using the factors set out in 18 U.S.C. § 3553(a). *See Gall*, 552 U.S. at 49–50. The first of the seven § 3553(a) factors that a sentencing court must consider is a "broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.'" *Id.* at 50 n.6 (quoting 18 U.S.C. § 3553(a)(1)).

Robinson's claim, in essence, is that the sentencing court misunderstood the relationship between this broad command and the Sentencing Guidelines' policy statement under § 5K1.1. He argues that even though the Government did not move for a departure under § 5K1.1, the court was not barred from carrying out its mandated task of considering the § 3553(a) factors, including his cooperation.

This court has previously held that, absent a government motion, a sentencing court does not have discretion to depart on the basis of the defendant's cooperation under § 5K1.1. *United States v. Solis*, 169 F.3d 224, 226–27 (5th Cir. 1999); *see also United States v. Arreola–Albarran*, 210 F. App'x 441, 443–44 (5th Cir. 2006) (unpublished) (per curiam) (citing *Solis* for this proposition post-*Booker*). This Court has not, however, had the opportunity to decide whether a sentencing court may nonetheless consider cooperation as part of the § 3553(a) factors in the absence of a § 5K1.1 motion. We now join our sister circuits in expressly holding that a sentencing court has the power to consider a defendant's cooperation under § 3553(a), irrespective of whether the Government files a § 5K1.1 motion. We further join our sister circuits in

holding that a sentencing court's failure to recognize its discretion to consider a defendant's cooperation under § 3553(a)(1) is a significant procedural error.

There are several persuasive reasons for adopting this rule. First, nothing in the text of § 3553(a) suggests that a § 5K1.1 motion should be the exclusive means for considering cooperation. Section 3553(a)(1) is a broadly worded provision guiding the sentencing court in its exercise of discretion. *See Gall*, 552 U.S. at 49 n.6. Indeed, § 3553(a)(1) "contains no express limitations as to what 'history and characteristics of the defendant' are relevant." *United States v. Fernandez*, 443 F.3d 19, 33 (2d Cir. 2006).

Second, this Court has presumed that a sentencing court may consider evidence of cooperation as part of the mandated consideration of § 3553(a) factors—and, in particular, § 3553(a)(1)—but that it retains discretion as to whether and what weight to give that cooperation evidence. *See United States v. Fraga*, 704 F.3d 432, 440 (5th Cir. 2013) ("No § 3553(a) factor requires the sentencing judge to take such cooperation into account, and we cannot conclude that the sentencing judge abused her discretion by considering the testimony but ultimately declining to place significant weight on that cooperation." (footnote omitted)). This approach is consistent with the Second Circuit's observation that § 3553(a)(1) is a "sweeping provision [that] presumably includes the history of a defendant's cooperation and characteristics evidenced by cooperation, such as remorse or rehabilitation." *Fernandez*, 443 F.3d at 33.

Third, every other circuit that has examined this issue has expressly stated that a court may consider evidence of cooperation under §3553(a)(1) even in the absence of a §5K1.1 motion. *See United States v. Landrón–Class*, 696 F.3d 62, 77–78 (1st Cir. 2012), *cert. denied,* 133 S. Ct. 1621 (2013); *United States v. Massey*, 663 F.3d 852, 858 (6th Cir. 2011); *United States v. Leiskunas*,

No. 12-60841

656 F.3d 732, 737 (7th Cir. 2011); *Fernandez*, 443 F.3d at 33; *United States v. Doe*, 398 F.3d 1254, 1260–61 (10th Cir. 2005).

Fourth, permitting a Sentencing Guideline rule regarding *departures* from the guidelines to preclude consideration of factors relevant to *variances* from the guidelines would conflate two distinct categories under post-*Booker* sentencing law.

> A "departure" is typically a change from the final sentencing range computed by examining the provisions of the Guidelines themselves.  It is frequently triggered by a prosecution request to reward cooperation . . . or by other factors that take the case "outside the heartland" contemplated by the Sentencing Commission when it drafted the Guidelines for a typical offense. A "variance," by contrast, occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory factors in 18 U.S.C. § 3553(a).

*United States v. Rangel*, 697 F.3d 795, 801 (9th Cir. 2012) (citation omitted), *cert. denied,* 133 S. Ct. 1294 (2013).  These categories have continuing importance not least because of the sort of review each occasions.  Whereas "a properly granted § 5K1.1 motion would reflect a proper application of the Sentencing Guidelines, and thus be entitled to an appellate presumption of reasonableness," a variance under § 3553(a) "could be granted absent government motion to effect a 'reasonable' sentence, [and] would not be entitled to the same presumption."  *United States v. Blue*, 557 F.3d 682, 686 (6th Cir. 2009) (internal quotation marks omitted) (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)).  We now hold that a court may consider evidence of cooperation under §3553(a)(1) even in the absence of a §5K1.1 motion.

Having established that courts may consider cooperation evidence under the § 3553(a) factors, we must still decide whether the sentencing court committed a significant procedural error by failing to appreciate its discretion

in the instant case.  Under other circumstances, this Court has held that a sentencing court procedurally erred when it failed to appreciate its discretion under § 3553(a) due to a misinterpretation of the Sentencing Guidelines.  *See United States v. Burns*, 526 F.3d 852, 862 (5th Cir. 2008) (holding that defendant was "entitled to have his sentence set by a judge aware of the discretion that *Kimbrough* [*v. United States*, 552 U.S. 85 (2007),] has announced").  The rationale of *Burns* applies with equal force here: a sentencing court commits procedural error if it fails to appreciate its discretion to consider evidence of cooperation under § 3553(a).  This is true even though our opinion marks this Circuit's first announcement of this rule.  *See id.* at 861 (vacating sentence and remanding to district court to exercise its discretion correctly under § 3553(a) in light of *Kimbrough*, which was decided between the district court's sentence and the defendant's appeal).

Applying this test, we conclude that the sentencing court did fail to appreciate its discretion to consider evidence of cooperation under § 3553(a).  The sentencing court "acknowledge[d]" the "very valuable" information Robinson provided in cooperating with law enforcement.  In addition, the court heard extensive argument from defense counsel on Robinson's cooperation and indicated that it had read Robinson's sentencing memorandum.  Yet the court was quite explicit in rejecting its authority to consider the evidence of Robinson's cooperation.  In the same sentence that the court acknowledged Robinson's cooperation, it stated that it "does [Robinson] no good for the purpose of sentencing *in that the Court does not have before it a 5K motion to consider*" (emphasis added).  The court went on to construe Robinson's request for a variance merely as a request for a departure and therefore "moot":

> [The § 5K1.1 motion] is certainly within the Government's prerogative to file.  They did not in this case. And, so, it's a moot question as to whether or not you have—would have received a

departure from the 720 months had the Government filed that motion. It's simply not before the Court.

This is not a case where the court merely evinced doubt or hesitation. *See, e.g.*, *Landrón–Class*, 696 F.3d at 78 (finding no error where court initially expressed doubt it had discretion to consider cooperation absent government motion). Nor is it a situation in which the court understood its discretion to consider the defendant's cooperation, but elected not to give that evidence any weight in the imposition of the sentence. *See, e.g.*, *Fernandez*, 443 F.3d at 34 (finding no error where sentencing court appreciated its discretion to consider cooperation evidence but gave it no weight). The sentencing court here clearly concluded it did not have the authority, and that conclusion was a significant procedural error.

### 3. Harmless Error

Not all procedural errors require reversal; the court may affirm the sentence in spite of a procedural error if that error is harmless—that is, if "the error did not affect the district court's selection of the sentence imposed." *United States v. Delgado–Martinez*, 564 F.3d 750, 753 (5th Cir. 2009) (quoting *Williams v. United States*, 503 U.S. 193, 203 (1992)). "The proponent of the sentence has the burden of establishing that the error was harmless." *Neal*, 578 F.3d at 274. If "a district court is mistaken about its authority to consider some factor during sentencing . . . then [the court] must remand for resentencing unless 'it is clear . . . that the district court would have imposed the same sentence had it known that it could consider' that factor." *United States v. Garcia*, 655 F.3d 426, 432 (5th Cir. 2011) (third alteration in original) (quoting *Unites States v. Davis*, 316 F. App'x 328, 332 (5th Cir. 2009) (unpublished) (per curiam)).

No. 12-60841

In light of this stringent standard for finding harmless error, we hold that the sentencing court's procedural error was not harmless. This Court's reasoning in *Burns* is instructive. In that case, the defendant asked the district court to exercise its discretion to reduce his sentence based on the then-existing disparity in treatment of crack cocaine and powder cocaine offenses under the Sentencing Guidelines. 526 F.3d at 860; *see also Garcia*, 655 F.3d at 432–33 (discussing *Burns*).[5] In response, the district court explained that it did not possess such discretion:

> I recognize what you claim, which is claimed not only by you but by others . . . of the disparity between crack cocaine and cocaine sentencing. And that argument has been—discussion and debate has been going on in circuit courts and in the Congress and among the Sentencing Commission, but the guidelines are what the guidelines are today. . . . The Court finds that the facts do not warrant a downward departure . . . for taking into consideration the difference between crack cocaine crimes under the guidelines and cocaine offenses under the guidelines as a decision that's been made by the Congress of the United States and the Sentencing Commission.
>
> The Court finds it has no—limited discretion, if any. *And if I do have discretion, I exercise my discretion not to downward depart on that basis.*

526 F.3d at 860–61 (alterations in original) (emphasis added). But, in fact, the district court in *Burns* did have that discretion according to the Supreme Court's subsequent decision in *Kimbrough v. United States*, 552 U.S. 85, 110 (2007).[6]

---

[5] At the time of Burns's sentencing, the Sentencing Guidelines reflected a 100:1 ratio of crack to powder, "meaning that for purposes of sentencing, one gram of crack cocaine was considered the equivalent of 100 grams of cocaine powder." *Burns*, 526 F.3d at 860. Burns argued that his sentence would have been significantly lower if the court had used the Guidelines applicable to powder cocaine, rather than crack. *Id.*

[6] The Supreme Court issued *Kimbrough* in between Burns's sentencing and his appeal. *Burns*, 526 F.3d at 861. *Kimbrough* held that a sentencing court could "conclude

20

No. 12-60841

On appeal, the Government argued that the district court's statements—"the facts do not warrant a downward departure" and "if I do have discretion, I exercise my discretion not to downward depart"—showed that the error was harmless. *Burns*, 526 F.3d at 861. This Court disagreed:

> Read in context, the district court's statement is that Burns is not entitled to a downward departure *under the Sentencing Guidelines.* This would mean that Burns's case was not atypical or unusual and fell within the "heartland" of the Sentencing Guidelines. *United States v. Winters*, 174 F.3d 478, 482 (5th Cir. 1999) ("a district court cannot depart from the guidelines unless it first finds . . . that facts or circumstances remove the case from the 'heartland' of typical cases encompassed within the guideline."). The *Kimbrough* issue has a different focus. We cannot tell from the record whether, if the judge had known that he could consider policy disagreement as an additional factor in the "array of factors warranting consideration" in his analysis under 18 U.S.C. § 3553(a), it would have affected the ultimate sentence imposed on Burns.

*Id.* at 861–62 (alteration in original). Accordingly, the Court vacated Burns's sentence on the basis that he was "entitled to have his sentence set by a judge aware of the discretion that *Kimbrough* has announced." *Id.* at 862.

As this Court subsequently explained in *Garcia*, "*Burns* sets a high bar." 655 F.3d at 433. Indeed, "[a] district court's mistaken belief regarding its authority under the guidelines is not harmless even where it states that the modified sentence is appropriate in light of other factors and that even if it had discretion to analyze the supposedly impermissible factor, that factor would not affect the sentence." *Id.* The *Garcia* opinion further explained that the district court's statements in *Burns* did not "make it obvious that it would have imposed the same sentence had it been aware of its authority." *Id.*

when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes." 552 U.S. at 110.

Turning to the present case, we find even stronger reasons for holding that the error was not harmless.  In *Burns*, the district court included the caveat that it would have imposed the same sentence even if it had considered the supposedly impermissible factor.  526 F.3d at 861 ("And if I do have discretion, I exercise my discretion not to downward depart on that basis.").  But here, the sentencing court never specifically addressed or weighed Robinson's cooperation in its conditional statements about what it might have done.  The sentencing court stated that "if the Court were to consider [the § 3553] factors, it would not have helped Mr. Robinson at all in his sentence because when the Court considers the nature and circumstances of this offense [it] finds that there is no reason when [sic] he would be entitled to any reduction."  The sentencing court reiterated, "If I considered all the factors under [§] 3553 that we might look at to warrant a reduction in your sentence under *Booker*, the Court would still be of the opinion that a 720-month sentence is appropriate in this case."  Although this was a caveat, it was not a caveat explaining that the court would have reached the same conclusion even considering Robinson's cooperation.  Thus, because the language in *Burns* did not show the error to be harmless, neither do the sentencing court's statements in this case.

Furthermore, as this Court explained in *United States v. Ibarra–Luna*, 628 F.3d 712 (5th Cir. 2010), the harmless error doctrine places a "heavy burden" on the proponent of a sentence to convincingly demonstrate that the sentencing court actually would have followed the very same reasoning absent the error.  *Id.* at 717.  Even though the Government did cite the sentencing transcript, the Government has not met its heavy burden.  Rather, the record supports vacating Robinson's sentence and remanding for consideration in light of the rule we have announced.

No. 12-60841

Consequently, we remand for resentencing by a sentencing court aware of its discretion to consider evidence of cooperation under § 3553(a). We express no view on what sentencing decisions the district court should make on remand.

## III. CONCLUSION

We AFFIRM the district court's denial of Robinson's motion to suppress, but VACATE and REMAND for resentencing consistent with this opinion.