# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30861

United States Court of Appeals
Fifth Circuit

**FILED**
August 8, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

RONALD THOMPSON, JR.,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CR-225-1

Before STEWART, Chief Judge, and JONES and OWEN, Circuit Judges.

PER CURIAM:*

Ronald Thompson, Jr., appeals his conviction under 21 U.S.C. § 841(a)(1) and (b)(1)(C) of possession with intent to distribute cocaine, possession with intent to distribute cocaine base, and possession with intent to distribute heroin. He contends that the district court erred in denying his motion to suppress evidence obtained following a traffic stop. We affirm the district court's judgment.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-30861

**I**

On July 27, 2017, investigators were conducting surveillance at a convenience store in an area known for illegal drug activity. At approximately 4:15 p.m., Detective Jason Tiliakos observed a black Infiniti pull into the parking lot. According to the incident report, the investigators had received an anonymous tip approximately five months earlier, in February 2017, that Thompson conducted drug sales from a black Infiniti. After a short time, Detective Tiliakos observed a man, later identified as Thompson's cousin Emanuel Harris, ride a bicycle up to the Infiniti, put his head through the driver's side window, and converse with the vehicle's occupant. Shortly thereafter, a second man approached the Infiniti and entered the vehicle through the passenger's side door. Seconds later, the unidentified man exited the Infiniti and left the area. Harris also left the area on the bicycle. Detective Tiliakos relayed his observations to assisting investigators as the Infiniti left the parking lot.

Detective Daniel April and Sergeant Brad Walsh began to follow the Infiniti and observed the vehicle cross the center line of the roadway several times. At approximately 4:59 p.m., the investigators activated their emergency lights and stopped the Infiniti. Detective April approached the driver's side, and the driver identified himself as Ronald Thompson. Sergeant Walsh approached the passenger's side and identified the passenger as Darryl Bourgeois. Detective April informed Thompson of the traffic violation and requested his driver's license and vehicle documents. According to one police report, "Detective April observed that Thompson was sweating heavily about the forehead and his body was visibly shaking while he produced his driver's license and vehicle documents." When Detective April asked Thompson where he was going, "Thompson stuttered while attempting to answer, clearing his

2

throat several times and eventually stated he was just driving around with no known destination."

Following a "name check," Detective April learned that Thompson's driver's license was in good standing. Rather than concluding the investigation, Detective April asked Thompson about his heavy sweating, stuttering, and body shakes. Thompson indicated that he was nervous because he was on parole for prior drug violations. The investigators then asked Bourgeois to exit the vehicle. Bourgeois told the investigators that Thompson was taking him to Des Allemands and that "he was unsure why Thompson was unable to provide that information upon being asked by Detective April," although the district court found that Bourgeois's statements were made after the computer checks had been completed.

At approximately 5:05 p.m., six minutes after the traffic stop was initiated, the investigators requested the assistance of a K-9 unit. Thompson was then asked to exit the vehicle and was placed in handcuffs. The canine unit arrived at 5:17 p.m., the dog alerted to the presence of drugs and officers searched the vehicle. Officers did not find any drugs in Thompson's vehicle. Thompson was then placed in the back of a police vehicle. When Thompson was later removed from the police vehicle officers found a clear plastic bag containing cocaine, cocaine base, ecstasy, and heroin.

Thompson was indicted under 21 U.S.C. § 841(a)(1) and (b)(1)(C) on three counts of possession with intent to distribute. Thompson filed a pre-trial motion to suppress but did not request an evidentiary hearing. Thompson argued that officers lacked reasonable suspicion to extend the traffic stop while they waited for a drug detection dog. The trial court made detailed findings of fact and found that officers had reasonable suspicion to extend the stop. The case proceeded to trial, and a jury convicted Thompson on all three counts. The

No. 18-30861

district court sentenced Thompson to 262 months of imprisonment, followed by six years of supervised release. Thompson appeals.

## II

Thompson does not challenge the validity of the initial traffic stop. Instead, he contends that Detective Daniel April and Sergeant Brad Walsh lacked reasonable suspicion to extend the stop beyond the time reasonably required to address the traffic violation, and therefore that he should not have been detained after the investigators learned that his driver's license was in good standing.

When reviewing the denial of a motion to suppress, we review factual findings for clear error and the ultimate constitutionality of law enforcement's actions de novo.[1] In addition to deferring to the district court's factual findings, we must view the evidence in the light most favorable to the prevailing party, in this case, the Government.[2] We may affirm the district court's decision on any grounds supported by the record.[3]

"The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment."[4] The legality of a traffic stop is examined under the two-pronged analysis described in *Terry v. Ohio*.[5] The court must first examine whether the initial official action was justified.[6] Second, the court determines whether the subsequent action was "reasonably related to the circumstances that justified the stop, or to dispelling [the] reasonable suspicion developed during the stop."[7] As a general rule, once all

---

[1] *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014).

[2] *See United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010) (citation omitted).

[3] *United States v. Charles*, 469 F.3d 402, 405 (5th Cir. 2006) (citation omitted).

[4] *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc).

[5] 392 U.S. 1 (1968); *Brigham*, 382 F.3d at 506.

[6] *Brigham*, 382 F.3d at 506.

[7] *Id.* at 507.

4

computer checks reveal no violations or reason for further detention, then reasonable suspicion disappears and the driver and passengers must be released.[8] "[I]f additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new reasonable suspicion has been dispelled or confirmed."[9] "Reasonable suspicion exists when the detaining officer can point to specific and articulable facts that, when taken together with rational inferences from those facts, reasonably warrant the search and seizure."[10] Reasonable suspicion to justify continued detention may not be based on hunches and doubts but rather must be based "upon objective evidence of specific criminal activity, interpreted by an officer experienced or educated in detecting that particular sort of activity."[11]  In assessing the proffered bases for continuing the detention, the court should not examine each factor in isolation but instead give due regard to the totality of the circumstances.[12]

The question we must answer is whether officers had reasonable suspicion to prolong Thompson's traffic stop beyond the time the computer check was concluded.

## A

Thompson takes issue with the district court's factfinding only in one respect: he urges that the unknown man who entered his vehicle at the convenience store could not have actually entered and sat in the passenger seat because Bourgeois was seated in the passenger seat at all times.  The record is

---

[8] *See United States v. Jenson*, 462 F.3d 399, 404 (5th Cir. 2006) (citing *United States v. Lopez-Moreno*, 420 F.3d 420, 431 (5th Cir. 2005)).

[9] *Lopez-Moreno*, 420 F.3d at 431 (citing *Brigham*, 382 F.3d at 507; *United States v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003)).

[10] *United States v. Estrada*, 459 F.3d 627, 631 (5th Cir. 2006) (citation omitted).

[11] *United States v. Cavitt*, 550 F.3d 430, 438 (5th Cir. 2008) (citation omitted).

[12] *United States v. Arvizu*, 534 U.S. 266, 274-75 (2002).

somewhat contradictory on this point.  Because Thompson did not request an evidentiary hearing, the only narrative in the record describing the incident is a police report.  That report does not explain how the man could have entered Thompson's vehicle and sat in the passenger seat while Bourgeois was seated there.  But that inconsistency does not leave us with the definite and firm conviction that a mistake has been made.[13]  One page of narrative describes the events from when Thompson was first observed at 4:15 p.m. until he was stopped at 4:59 p.m.  There may be an explanation that was not recorded in the officer's report.  Moreover, Thompson did not bring this alleged discrepancy to the attention of the trial court.

Prior to initiating the traffic stop, Detective April and Sergeant Walsh knew that the driver of the black Infiniti had just engaged in activity which, in their training and experience, was consistent with drug trafficking.  Detective April and Sergeant Walsh also knew that the activity had taken place in a high-drug-crime area.  Thompson does not challenge the factual accuracy of these statements.  Officers and the district court properly considered these factors as part of the reasonable-suspicion analysis.[14]

**B**

Thompson argues that the anonymous tip lacked specificity and reliability, was never corroborated by a subsequent investigation, and was stale.  Five months prior to the stop, investigators had received an anonymous tip that Thompson was distributing drugs from a black Infiniti.

---

[13] *See United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009) (citation omitted).

[14] *See Ornelas v. United States*, 517 U.S. 690, 700 (1996) (citation omitted) ("[A] police officer may draw inferences based on his own experience in deciding whether probable cause exists."); *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citation omitted) ("[T]he fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis.").

We consider several factors in assessing the reliability of an informant's tip:

> the credibility and reliability of the informant, the specificity of the information contained in the tip or report, the extent to which the information in the tip or report can be verified by officers in the field, and whether the tip or report concerns active or recent activity, or has instead gone stale.[15]

As we have noted, the Supreme Court views an anonymous tip with "strong distrust."[16] Merely describing the person's appearance is insufficient to create reasonable suspicion; it must "show that the tipster has knowledge of concealed criminal activity . . . [and is] reliable in its assertion of illegality, not just in its tendency to identify a determinate person."[17]    Nevertheless, "there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion."[18]    The staleness of a tip is determined on the facts of each case.[19]

During the course of the stop, and prior to learning that Thompson's driver's license was in good standing, Detective April learned that the black Infiniti was driven by Thompson.    Further, Detective Tiliakos observed Thompson engage in behavior that was consistent with drug trafficking.  That corroborated the substance of the tip, including its assertion that Thompson was engaged in illegal drug transactions.    Taken together, officers demonstrated that the tip was reliable in its ability to identify Thompson as a driver of a black Infiniti and reliable in its assertion of illegal activity.

---

[15] *United States v. Martinez*, 486 F.3d 855, 861 (5th Cir. 2007) (citations omitted).

[16] *Id.* at 862.

[17] *Florida v. J.L.*, 529 U.S. 266, 272 (2000) (citation omitted).

[18] *Martinez*, 486 F.3d at 863 (citation and internal quotation marks omitted).

[19] *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984) (citing *United States v. Freeman*, 685 F.2d 942 (5th Cir. 1982)).

No. 18-30861

Nor was the tip stale. Thompson counts a generous six-months between the tip and the stop. But our cases do not mechanically count the time between events alleged and the time of the Fourth Amendment activity.[20] Rather, our opinions consistently bear out that information describing "a long-standing, ongoing pattern of criminal activity, even if fairly long periods of time have lapsed between the information" and subsequent detention or search is not considered "stale."[21] The anonymous tip described open-ended activity—that Thompson was using the black Infiniti for drug transactions—not that he would act in a certain way or use the vehicle on a particular occasion.[22] Law enforcement officers witnessed activity consistent with the drug trafficking reported by the tip.

## C

Detective April observed that Thompson was sweating heavily and that his body was visibly shaking while he produced his driver's license and vehicle documents. When Detective April asked Thompson where he was going, Thompson stuttered and cleared his throat several times before eventually stating that he was driving around with no known destination.

Although Thompson provides innocent explanations for his activities and nervousness, "factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion."[23] Further, although Thompson's possible drug trafficking in a high-drug-crime area, the anonymous tip, and Thompson's nervousness, considered in isolation from one another, may not have been sufficient to establish the requisite reasonable

---

[20] *Id.*

[21] *United States v. Craig*, 861 F.2d 818, 822-23 (5th Cir. 1988) (citations omitted).

[22] *See United States v. Gonzalez*, 190 F.3d 668, 673 (5th Cir. 1999) (affirming denial of motion to suppress in which officers detained defendant two months after informant had given an open-ended tip that defendant was engaged in smuggling).

[23] *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999) (citation omitted).

No. 18-30861

suspicion, based on the totality of the circumstances and viewing the evidence in the light most favorable to the Government, the district court did not err in concluding that Detective April and Sergeant Walsh had reasonable suspicion to believe that Thompson was engaged in illegal drug activity, justifying their decision to prolong his detention until the K-9 unit arrived.[24]

We note that the Government urges that we may affirm on an alternative basis. The Government points to statements by Harris that allegedly confirm that Thompson sold drugs at the convenience store. However, the district court expressly found that Detective April and Sergeant Walsh were not informed of Harris's statements until after the search of Thompson's car. Accordingly we do not rely on the Government's proposed alternative ground.[25]

\*    \*    \*

The district court properly denied Thompson's motion to suppress. Its judgment is AFFIRMED.

---

[24] *See United States v. Arvizu*, 534 U.S. 266, 273-78 (2002); *United States v. Pack*, 612 F.3d 341, 347, 361-62 (5th Cir. 2010).

[25] *See United States v. Massi*, 761 F.3d 512, 521 (5th Cir. 2014) (citation omitted) ("The facts leading to a finding of reasonable suspicion do not have to be based on a law enforcement officer's personal observation, but can also arise from the 'collective knowledge' of law enforcement entities, so long as that knowledge gives rise to reasonable suspicion and was communicated between those entities at the time of the stop.").