# United States Court of Appeals
## for the Fifth Circuit

No. 23-50905
CONSOLIDATED WITH
No. 23-50906
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
October 25, 2024

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

*Plaintiff—Appellee,*

*versus*

JOHNNY EMERSON,

*Defendant—Appellant.*

Appeals from the United States District Court
for the Western District of Texas
USDC Nos. 2:21-CR-632-1,
2:21-CR-2228-1

Before SMITH, STEWART, and DUNCAN, *Circuit Judges.*

PER CURIAM:[*]

Johnny Emerson was convicted of illegal alien transportation, in violation of 8 U.S.C. § 1324. His term of supervised release for his conviction for conspiracy to transport and move, and attempt to transport and move, an

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 23-50905
c/w No. 23-50906

illegal alien within the United States, in violation of § 1324, was also revoked. On appeal, Emerson challenges the district court's denial of his motion to suppress evidence discovered during the investigatory stop of a U-Haul truck he was driving by Sergeant Esteban Luna of the Texas Department of Public Safety (DPS). He has also indicated that he appeals the revocation of his supervised release; however, he does not assert any arguments challenging it.

Although Emerson has been released from Bureau of Prisons custody, he is still subject to a term of supervised release for his conviction for illegal alien transportation, and this appeal is not moot as to either the conviction or sentence. *See Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) (noting that there are presumed collateral consequences from a conviction); *United States v. Vega*, 960 F.3d 669, 672-75 (5th Cir. 2020) (reaffirming that a challenge to a sentence is not moot if the defendant is subject to a supervised release term). However, because Emerson has not shown that he will suffer collateral consequences as a result of the revocation of his supervised release and because no further term of supervised release was imposed upon revocation, his appeal of the revocation of his supervised release does not present a case or controversy, and this court lacks jurisdiction. *See Spencer*, 523 U.S. at 7. Accordingly, Emerson's appeal of the revocation of his supervised release is DISMISSED as moot.

On appeal, Emerson argues that Sergeant Luna lacked reasonable suspicion to conduct the traffic stop on his U-Haul truck. "When reviewing a denial of a motion to suppress evidence, [we] review[] factual findings for clear error and the ultimate constitutionality of law enforcement action de novo." *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014). Further, "[w]here a district court's denial of a suppression motion is based on live oral testimony, the clearly erroneous standard is particularly strong because the judge had the opportunity to observe the demeanor of the witnesses." *United*

2

No. 23-50905
c/w No. 23-50906

*States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (internal quotation marks and citation omitted).

The legality of a traffic stop is examined under the two-pronged analysis set forth by the Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). To evaluate whether a Fourth Amendment violation occurred during a traffic stop, this court first asks, "whether the officer's action was justified at its inception," and then, "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id.* Here, Emerson challenges only the first *Terry* prong.

The circumstances surrounding the stop support the district court's determination that Sergeant Luna had reasonable suspicion that criminal activity was afoot, namely that Emerson was engaging in human smuggling in violation of Texas law. *See United States v. Smith*, 952 F.3d 642, 648 (5th Cir. 2020); *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). The record shows that Sergeant Luna's decision to conduct a traffic stop on Emerson's U-Haul truck was not based on a "mere hunch." *Smith*, 952 F.3d at 648 (internal quotation marks and citation omitted). Prior to his encounter with Emerson, Sergeant Luna was briefed by the DPS that his patrol area, which included FM 133, was getting "inundated with human smuggling"; human smugglers were utilizing FM 133 to avoid detection at a nearby immigration checkpoint; and he should specifically "be on the lookout" for U-Haul vehicles that were "being utilized to transport human smuggling." Sergeant Luna observed Emerson driving on FM 133 shortly after midnight in a U-Haul truck, which Sergeant Luna indicated was uncommon for that road at that time of night. In addition to the timing of Emerson's travel, he was only 40 to 45 miles away from the United States border at the time of the encounter. *See United States v. Morales*, 191 F.3d 602, 604-05 (5th Cir. 1999); *United States v. Orozco*, 191 F.3d 578, 582 (5th Cir. 1999). Additionally,

No. 23-50905
c/w No. 23-50906

Emerson's pattern of traveling east on FM 133 toward Artesia Wells, Texas, was similar to that of the multiple human smuggling cases that Sergeant Luna's team had previously encountered as part of the DPS's operation.

Thus, viewing the evidence in the light most favorable to the Government, Sergeant Luna's traffic stop was supported at its inception by numerous specific and articulable facts and inferences that established reasonable suspicion.  *See Terry*, 392 U.S. at 21; *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010).

The judgment of the district court is AFFIRMED.  Emerson's appeal of the order revoking his supervised release is DISMISSED as moot.