**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James MAY, Defendant-Appellant.**

**No. 86–4615.**

United States Court of Appeals,
Fifth Circuit.

June 8, 1987.

Rehearing and Rehearing En Banc
Denied July 13, 1987.

Julie Ann Epps, Royals, Hartung & Davis, Jackson, Miss., for defendant-appellant.

Joe M. Hollomon, Asst. U.S. Atty., George Phillips, U.S. Atty., Jackson, Miss., for plaintiff-appellee.

Before RUBIN, RANDALL, and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

James May appeals his conviction on five counts of possession with intent to distribute controlled substances.[1] According to May, the district court abused its discretion in failing to dismiss the case with prejudice following the Government's violation of the Speedy Trial Act.[2] May also argues that the district court erred in refusing to suppress evidence obtained in a search of his residence. Finding May's arguments to be unavailing, we affirm the district court's judgment.

### I.

Following an undercover investigation, Mississippi Bureau of Narcotics (MBN) agents obtained a warrant on December 5, 1985, to search the residence and property of James "Peewee" May located on Whitehouse Road in Jackson, Mississippi. When they executed the warrant later that day, MBN agents discovered contraband hidden throughout May's residence. May was arrested later that evening, charged with state narcotics violations, and held in state custody until he eventually posted bond on December 12.

In the meantime and after meeting with MBN officials, federal authorities decided to charge May with federal narcotics violations as well. In connection with these charges, federal marshals arrested May as he left the state courthouse on December 12. May remained in federal custody until he posted bond on December 20.

A federal grand jury returned a six-count indictment on January 22, 1986, charging

May with federal narcotics and firearms offenses. This initial indictment was dismissed without prejudice four weeks later at the Government's request during an ex parte hearing before a magistrate.[3] The next day, February 20, May was reindicted on five counts of possession with intent to distribute controlled substances and four counts of federal firearms offenses.

Following reindictment, May filed a motion asserting that the initial indictment should have been dismissed with prejudice based on the Government's failure to comply with the Speedy Trial Act. May pointed out that the initial indictment was returned forty-one days after his federal arrest, in violation of the Act's requirement of indictment within thirty days of arrest.[4] May also moved to suppress evidence discovered during MBN's December 5 search of his residence. According to May, the affidavit filed in support of MBN's request for a warrant failed to establish probable cause.

After conducting a pretrial hearing, the district court denied both motions. The district court acknowledged that the Government had violated section 3161(b) of the Speedy Trial Act by delaying more than thirty days beyond May's arrest before securing an indictment. The district court further acknowledged that the magistrate had failed to consider this violation or the factors set forth in 18 U.S.C. § 3162(a)(1) in dismissing the initial indictment without prejudice. Nonetheless, applying the section 3162(a)(1) factors itself, the court concluded that the dismissal was properly without prejudice. The district court also concluded that the affidavit in support of MBN's request for a search warrant was adequate to establish probable cause to search May's residence.[5] May entered a conditional guilty plea to five counts of possession with intent to distribute con-

---

**1.** 21 U.S.C. § 841(a)(1).

**2.** 18 U.S.C. §§ 3161–3174.

**3.** *See* Fed.R.Crim.P. 48(a).

**4.** *See* 18 U.S.C. § 3161(b).

**5.** MBN agents searched property owned by May on the west side of Whitehouse Road in addition to his residence on the east side of the road. The district court did suppress that evidence seized on the west side of the road because the description in the warrant was inadequate to authorize a search of that property.

trolled substances and then filed this appeal challenging the district court's denial of his speedy trial and fourth amendment claims.

## II.

Under section 3161(b) of the Speedy Trial Act, the Government must indict an accused within thirty days of his arrest, unless the time is extended for one of the eight reasons enumerated in section 3161(h). If the Government fails to meet this thirty-day requirement, section 3162(a)(1) requires the trial court to dismiss the complaint. Although dismissal is mandatory, the Act grants the trial court discretion to dismiss the complaint with or without prejudice. In exercising its discretion, the trial court must consider: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to dismissal; and (3) the impact of a reprosecution on the administration of the Act and on the administration of justice.[6]

■ The second of these factors, the facts and circumstances leading to dismissal, presents the greatest difficulty in the instant case. This factor requires consideration of the Government's reason for having violated the Act.[7] Because the Government alone usually knows the reason for

the delay, it bears the initial burden of explaining why the violation occurred.[8] Once the Government meets this initial burden, the defendant may show that the reason offered by the Government is pretextual. To establish pretext, the defendant is entitled to subpoena relevant documents and call Government officials to testify regarding the reasons for the violation.

■ In the instant case, the Government offered no explanation whatsoever for having failed to indict May within thirty days of his arrest. By standing mute, the Government forfeited its opportunity to establish an excuse for the delay that would weigh in favor of dismissal without prejudice.[9] May, on the other hand, failed to persuade the district court that the Government delayed the prosecution in a bad faith effort to harass May and persuade him to "snitch" on local government officials.[10] Our review of the record leads us to conclude that the district court's finding against May was not clearly erroneous. Nevertheless, the burden to explain the reason for the delay was on the Government, and it failed to do so. We must assume, therefore, that the delay was unjustified and weigh the second section 3162(a)(1) factor in favor of dismissal with prejudice.[11]

---

**6.** 18 U.S.C. § 3162(a)(1).

**7.** *See, e.g., United States v. Peeples,* 811 F.2d 849, 851 (5th Cir.1987); *United States v. Salgado-Hernandez,* 790 F.2d 1265, 1286 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986).

**8.** *Cf. United States v. Russo,* 741 F.2d 1264, 1267 (11th Cir.1984); *United States v. Carrasquillo,* 667 F.2d 382, 388 (3d Cir.1981). The burden of explaining the reason for the delay is thus the same as in sixth amendment speedy trial cases. *See, e.g., Cain v. Smith,* 686 F.2d 374, 382 (6th Cir.1982) ("the prosecution has the burden of explaining the cause for pretrial delay."); *Terry v. Duckworth,* 715 F.2d 1217, 1220 (7th Cir. 1983) (burden of explaining delay rests on the state); *Morris v. Wyrick,* 516 F.2d 1387, 1390 (8th Cir.), *cert. denied,* 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975) ("we do not think the state has justified the delay.").

**9.** A variety of explanations may suffice to weigh in favor of dismissal without prejudice. *See, e.g., United States v. Peeples,* 811 F.2d at 851

(confusion attributable in part to defendant); *United States v. Salgado-Hernandez,* 790 F.2d at 1268 (negligent oversight).

**10.** May observes that the Government resisted his attempt to call James Tucker, the Assistant United States Attorney originally assigned to the case, as a witness. At the evidentiary hearing before the district court, the Government argued that May had failed to make a proper request for Tucker's testimony pursuant to 28 C.F.R. § 16.26 (1986). May conceded this point during the hearing.

**11.** Our assumption that the delay was unjustified in the absence of explanation by the Government accords with the approach taken in sixth amendment speedy trial cases. *See, e.g., Cain v. Smith,* 686 F.2d 374, 382 (6th Cir.1982) ("Unexplained delay is weighed against the prosecution."); *Terry v. Duckworth,* 715 F.2d 1217, 1220 (7th Cir.1983) (absence of explanation for delay should weigh against the government); *Jones v. Morris,* 590 F.2d 684, 686 (7th Cir.1979) ("the absence of any reason for the delay should

**534**

Whether the district court properly weighed the lack of justification for delay against the Government is something less than crystal clear from the record. In response to the Government's silence, the district court assumed that the Government was at least guilty of negligence. What weight the court attached to this assumed negligence is unclear, although the district court did observe "that simple negligence is not enough to cause a dismissal under Section 3162 with prejudice." The district court may have considered negligence as a factor weighing in favor of dismissal without prejudice.[12] The court may, on the other hand, have simply meant that given the sum total of factors present in this case, the Government's negligence was not alone sufficient to require dismissal with prejudice.[13] Although the weight attached to the Government's silence by the district court is unclear, we need not remand this case for reconsideration. Here we are able to determine without additional assistance from the district court[14] that the case was properly dismissed without prejudice.

The first and third section 3162(a)(1) factors, seriousness of the offense and impact of reprosecution on the administration of the Act and on the administration of justice itself, both weigh heavily in favor of dismissal without prejudice. The district court found and May agrees that the offenses charged are serious.[15] Rather than dispute the seriousness of the charges, May argues that this factor is neutralized by the existence of pending state charges that overlap the federal charges. According to May, this pending state prosecution is sufficient to assure the administration of justice. Nothing in the record, however, indicates the status of the state prosecution. Absent a conviction on substantially related state charges,[16] we fail to see how the mere fact that state charges were filed reduces the Government's interest in prosecuting an individual charged with serious federal offenses.

When the charges are serious, courts should impose the sanction of dismissal with prejudice only for a correspondingly serious delay, especially in the absence of a showing of prejudice.[17] The delay in indicting May was relatively brief, he was free on bail and permitted to travel throughout the period of delay, and there has been no credible showing that May's defense was in any way impaired by the delay. May's vague assertion that the eleven-day delay in obtaining an indictment impaired his ability to finance his defense is insufficient to demonstrate any actual prejudice caused by the Government's failure to obtain an indictment within thirty days of his arrest. May has offered no concrete evidence whatsoever in support of this improbable

weigh against the state."); *United States v. Jackson,* 542 F.2d 403, 407 (7th Cir.1976) (Failure to explain reason for delay should weigh against the prosecution.); *United States v. Lockett,* 526 F.2d 1110, 1111 (7th Cir.1975) ("Failure to account for delay may be weighed against the prosecution."); *Morris v. Wyrick,* 516 F.2d 1387, 1390 (8th Cir.1975), *cert. denied,* 423 U.S. 925, 96 S.Ct. 268, 46 L.Ed.2d 251 (1975) (Since the state failed to justify the delay, court must assume that there is no justifiable reason and weigh this factor heavily against the state.).

**12.** *See United States v. Salgado-Hernandez,* 790 F.2d 1265, 1286 (5th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 463, 93 L.Ed.2d 408 (1986). *Compare United States v. Caparella,* 716 F.2d 976, 980 (2d Cir.1983) (Given the government's negligent oversight, the second section 3162(a)(1) factor militates in favor of dismissal with prejudice.).

**13.** *See United States v. Russo,* 741 F.2d at 1267–68.

**14.** *See also United States v. Brown,* 770 F.2d 241, 244–45 (1st Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 816, 88 L.Ed.2d 789 (1986); *United States v. Stayton,* 791 F.2d 17, 21 (2d Cir.1986); *United States v. Tunnessen,* 763 F.2d 74, 79 (2d Cir.1985).

**15.** A number of courts have categorized as serious drug offenses similar to those charged here. *See, e.g., United States v. Brown,* 770 F.2d at 244; *United States v. Stayton,* 791 F.2d at 21; *United States v. Simmons,* 786 F.2d 479, 485 (2d Cir. 1986); *United States v. Phillips,* 775 F.2d 1454, 1456 (11th Cir.1985); *United States v. Russo,* 741 F.2d at 1267.

**16.** *See United States v. Jones,* 602 F.Supp. 1045, 1050 (E.D.Pa.1985); *United States v. Smith,* 588 F.Supp. 1403, 1405 (D.Haw.1984).

**17.** *United States v. Salgado-Hernandez,* 790 F.2d at 1268–69; *United States v. Phillips,* 775 F.2d at 1456; *United States v. Hawthorne,* 705 F.2d 258, 260 (7th Cir.1983).

assertion. Given the seriousness of the offense, the slightness of the delay, and the absence of any showing of prejudice, the first and third section 3162(a)(1) factors weigh in favor of permitting reprosecution.

The Government's failure to offer any explanation for the delay, or at least to explain why it could not explain, has made this a very close case. Its failure in this regard is indefensible and ignores its responsibility to the public, to the accused, and to the courts. Nonetheless, the lack of justification for the delay is outweighed by the seriousness of the charges and the fact that the public's interest in the administration of justice calls for reprosecution. The indictment was, therefore, properly dismissed without prejudice.

### III.

May attacks the search warrant authorizing the search of his residence on the ground that the affidavit supporting issuance of the warrant was defective. That affidavit relied primarily on information provided by unnamed agents of the MBN who were involved in an undercover investigation of May's activities.[18] The affiants, who were themselves MBN agents, failed to expressly identify how they got their information. The affiants never stated, for example, that they themselves were involved in investigating May. Nor did they state that the agents who were involved in the investigation, if other than the affiants, informed the affiants of the facts contained in the affidavit. According to May, the affiant's failure to specify how they got their information deprived the judicial officer who issued the search warrant of grounds to adequately scrutinize the reliability of that information.

In evaluating the sufficiency of the affidavit, we are mindful that "the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract ... [A]ffidavits for search warrants ... must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.... Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." [19] An affidavit supporting an application for a search warrant must, of course, provide the judicial officer with sufficient reliable information to determine probable cause. In making this determination, however, the officer may draw reasonable inferences from the material he receives, and his ultimate probable cause decision should be paid great deference by reviewing courts.[20]

---

**18.** The affidavit supporting issuance of the search warrant included the following statement of facts:

> Affiants are Agents of the Mississippi Bureau of Narcotics and have been involved in investigations and detection of illicit trafficking [*sic*] of controlled substances for approximately one and one half years. Affiants have attended drug enforcement schools sponsored by the Drug Enforcement Administration.
>
> On Wednesday October 30, 1985 Agents of the Mississippi Bureau of Narcotics purchased a quantity [*sic*] of cocaine from a subject in the Jackson, Hinds County, Ms. area. An MBN undercover Agent met with this subject and negoiated [*sic*] for the purchase of cocaine. This subject stated to the undercover Agent (Agent Chiles) that he would have to go pick up the cocaine and bring the cocaine back to her. Mississippi Bureau of Narcotics surveillance Agents followed this subject to the property of James "Peewee" May; where, he stayed for a short time and returned to Agent Chiles with a quantity [*sic*] of cocaine.
>
> On Thursday December 5, 1985 Agent Chiles met with another subject and negoiated

[*sic*] for a quantity [*sic*] of cocaine. Mississippi Bureau of Narcotics surveillance Agents followed this subject also to the property of James "Peewee" May. This subject returned to meet Agent Chiles with a quantity [*sic*] of cocaine which she purchased. MBN Agents then arrested this subject. After being advised of his miranda [*sic*] rights, this subject stated, against his own penal interest, that he had gone to the property of James "Peewee" May located at the end of Whitehouse Road and purchased the cocaine which he sold to Agent Chiles.

> This subject further stated that he has purchased cocaine from James "Peewee" May three times within the past week.

**19.** *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). *See also United States v. Antone*, 753 F.2d 1301, 1307 (5th Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 64, 88 L.Ed.2d 52 (1986); *Christian v. McKaskle,* 731 F.2d 1196, 1200 (5th Cir.1984).

**20.** *Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); *see also Unit-*

■ A commonsense reading of the affidavit in the instant case reveals an adequate basis for concluding that the affiants obtained their information from a reliable source. Although the affidavit does not specifically state as much, an individual reading the affidavit would reasonably infer either (1) that the affiants were themselves the unnamed agents identified in the affidavit and that the information was based on their personal observations; or (2) that the affiants had received their information from colleagues who were the unnamed agents.[21] Statements by law enforcement officials based upon personal observation or upon the observation of fellow officers participating in the same investigation are entitled to a presumption of reliability.[22] Since a commonsense reading of the affidavit reasonably identifies how the affiants got their information, and since a presumption of reliability attaches to information provided by such sources, May's initial challenge to the affidavit is without merit.[23]

■ May also asserts that the affidavit failed to demonstrate a nexus between criminal activity and the place to be searched. After describing the place to be searched as the residence and property of James May located at the end of Whitehouse Road,[24] the affidavit stated that an informant had purchased cocaine from May on May's property located at the end of Whitehouse Road. According to May, the facts stated in the affidavit were insufficient to justify a search of his residence, which is actually on the east side of Whitehouse Road toward the end of the road—but not at the very end of the road.

The record reveals that Whitehouse Road is a public street running north and south that dead ends into a vacant lot at its northern end. May's residence, which is on the east side of the road, is located on a lot the northern boundary of which is adjacent to a second vacant fifty-foot lot. The two vacant lots are adjacent to each other. The north side of May's residence is bounded by a fence that extends across Whitehouse Road. Whether the fence in any way impedes traffic along the road, or permits traffic to pass freely, is not in the record. There is also nothing in the record to indicate whether May owns any additional property closer to the dead end of Whitehouse Road. In any event, the only property north of May's residence consists of the two vacant lots, and the only structure closer to the dead end of the road is a church located across the street from May's residence.

The MBN affidavit established the requisite nexus between criminal activity and the place to be searched if the facts stated permitted a reasonable conclusion that cocaine would probably be found at May's residence.[25] The affidavit clearly indicated

ed States v. Settegast, 755 F.2d 1117, 1121 (5th Cir.1985) (quoting United States v. Phillips, 727 F.2d 392, 394 (5th Cir.1984)).

21. See United States v. Reed, 700 F.2d 638, 641 (11th Cir.1983) (although affidavit fails to identify source of its information, it is clear that the information was provided by fellow government investigators); see also United States v. Beusch, 596 F.2d 871, 875 (9th Cir.1979) (magistrate was able to reasonably infer source of information).

22. See, e.g., United States v. Flynn, 664 F.2d 1296, 1303 (5th Cir.), cert. denied, 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982); United States v. Hayles, 471 F.2d 788, 793 (5th Cir.), cert. denied, 411 U.S. 969, 93 S.Ct. 2159, 36 L.Ed.2d 690 (1973); Brooks v. United States, 416 F.2d 1044, 1049 (5th Cir.1969), cert. denied, 400 U.S. 840, 91 S.Ct. 81, 27 L.Ed.2d 75 (1970).

23. May also challenges as unreliable a hearsay statement in the affidavit made by an informant

the day of May's arrest. The judicial officer who issued the warrant could have properly concluded, however, that the statement's reliability was established by MBN agents who observed the informant going onto May's property and returning with cocaine.

24. May's attorney conceded at oral argument that the description of the place to be searched contained in both the affidavit and ensuing search warrant was adequate to permit the executing officer to locate the place intended. See Steele v. United States, 267 U.S. 498, 45 S.Ct. 414, 69 L.Ed. 757 (1925); see also Maryland v. Garrison, —— U.S. ——, ——, 107 S.Ct. 1013, 1021, 94 L.Ed.2d 72 (1987) (Blackman, J., dissenting).

25. United States v. McKinney, 758 F.2d 1036, 1043 (5th Cir.1985); United States v. Phillips, 727 F.2d 392, 394 (5th Cir.1984); United States v. Green, 634 F.2d 222, 225 (5th Cir.1981).

that May was selling cocaine from his property at the end of Whitehouse Road. May's residence was his property and it was located at the end of Whitehouse Road, or at least closer to the end than anything but the church across the street. Testing the affidavit in a commonsense fashion, allowing for reasonable inference, and giving due deference to the judicial officer who issued the warrant, one conclusion is clear: the affidavit was sufficient to permit a reasonable conclusion that cocaine would probably be found at May's residence. May's assertion to the contrary is without merit.

### IV.

Having rejected each of May's contentions on appeal, we affirm the judgment of the district court.

AFFIRMED.