# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-11783

United States Court of Appeals
Fifth Circuit

**FILED**
February 27, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff–Appellee,

v.

JESSE HUERRA,

> Defendant–Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before REAVLEY, SMITH, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Jesse Huerra was convicted of distributing methamphetamine, using firearms to further a drug-trafficking crime, and possessing firearms as a convicted felon. Huerra has appealed and contends that: (1) there was no probable cause to issue the warrant and therefore the district court should have suppressed the evidence seized during a search of his home; (2) errors during voir dire violated his Sixth Amendment right to a fair and impartial jury; and (3) the district court erroneously applied the career-offender enhancement to his Sentencing Guidelines range. We affirm.

No. 16-11783

## I

Police in San Angelo, Texas, suspected Huerra of trafficking methamphetamine and applied for a warrant to search his home. Primary support for the warrant application came from San Angelo Detective Hank Heathcock's five-page affidavit, which recounted Huerra's suspected trafficking activities and included information from two confidential informants (CIs) and two other police officers. A Texas state-court judge issued a warrant to search Huerra's house for methamphetamine and related items. San Angelo police, including Heathcock, executed the warrant and found drug paraphernalia, three firearms, and more than 1,500 grams of methamphetamine.

Relevant to this appeal, Huerra was charged with possession with intent to distribute 500 grams or more of methamphetamine (Count 12), possession of firearms in furtherance of a drug trafficking crime (Count 13), and possession of firearms by a convicted felon (Count 14). Huerra pled not guilty to all counts.

Before trial, Huerra filed a motion to suppress the evidence seized during the search. He argued that the affidavit so lacked indicia of probable cause that the officers who executed the warrant could not in good faith have thought that it was valid. The district court held a hearing and then denied the motion. It ruled that the good-faith exception to the exclusionary rule applied and, alternatively, that the supporting affidavit gave the state-court judge a substantial basis to find probable cause.

During voir dire, potential juror Jemal Floyd disclosed in open court that he was a parole officer who was currently supervising Huerra. The district court immediately excused Floyd. Prompted by defense counsel's follow-up questions, two other panel members expressed doubt about their ability to remain impartial in light of Floyd's statement. The district court then re-

No. 16-11783

explained to the venire the presumption of innocence and the burden of proof and re-emphasized the jury's proper role in the case, following which a third panel member asserted that he too could be neither fair nor impartial. Defense counsel moved to strike the panel, arguing that Floyd's "outburst" had "tainted" the venire. The district court overruled the objection but ultimately excused the three panel members who questioned their ability to be impartial.

The jury convicted Huerra on all counts. The district court ordered preparation of a presentence report (PSR), and the probation officer filed a PSR with two addenda. For Count 12, the PSR recommended life imprisonment because Huerra had two prior "convictions for a felony drug offense," triggering a statutory "mandatory term of life imprisonment."[1] For Count 13, the PSR concluded that Huerra was a "career offender" under Section 4B1.1 of the Federal Sentencing Guidelines and applied that enhancement to Huerra's Guidelines range. The PSR based the career-offender designation on three prior Texas convictions: one for aggravated assault and two for possession with intent to distribute a controlled substance. The career-offender enhancement increased the Guidelines range for Count 13 from 295-months-to-life to 420-months-to-life in prison. For Count 14, the PSR recommended a 10-year term of imprisonment because the Guidelines range exceeded the statutory maximum of 10 years, with or without the career-offender enhancement.

Huerra objected to the PSR, contending that the mandatory life sentence as to Count 12 did not apply and that he did not qualify as a career offender under the Guidelines. The probation officer declined to amend the PSR, and the district court overruled Huerra's objections and adopted the PSR. The district court sentenced Huerra to three concurrent sentences: life

---

[1] *See* 21 U.S.C. § 841(b)(1)(A).

No. 16-11783

imprisonment on Count 12; 420 months of imprisonment on Count 13; and 120 months of imprisonment on Count 14.  Huerra appealed.

## II

Huerra contends that his motion to suppress the evidence found at his home should have been granted because the search warrant was invalid.  We first consider whether the good-faith exception to the exclusionary rule applies.  We review de novo the district court's determination that it did.[2]

## A

When law-enforcement officers seize evidence through objectively reasonable reliance on a search warrant, the Fourth Amendment does not require that courts suppress the evidence.[3]  This principle is the good-faith exception to the exclusionary rule.  Typically, the fact that a magistrate has issued the warrant can establish that officers executed the warrant in good faith.[4]  However, officers may not rely on a warrant that was supported only by a "bare bones affidavit."[5]  We label an affidavit "bare bones" only "if it is so deficient in demonstrating probable cause that it renders an officer's belief in its existence completely unreasonable."[6]  For example, affidavits "that merely state that the affiant 'has cause to suspect and does believe' or 'has received reliable information from a credible person and does believe' that contraband

---

[2] *United States v. Cherna*, 184 F.3d 403, 406-07 (5th Cir. 1999) (citing *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)).

[3] *Id.* at 407 (citing *United States v. Leon*, 468 U.S. 897, 922 (1984)).

[4] *See United States v. Shugart*, 117 F.3d 838, 843-44 (5th Cir. 1997) (citing *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988)).

[5] *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997) (quoting *United States v. Alix*, 86 F.3d 429, 435 (5th Cir. 1996)).

[6] *Id.* (citing *Satterwhite*, 980 F.2d at 320-21).

4

is located on the premises" are bare bones.[7] We make this determination by evaluating the totality of the circumstances.[8]

A reasonable officer could have relied on this warrant in good faith. First, a magistrate issued the warrant, which normally establishes good faith. Second, Officer Heathcock's five-page affidavit was not bare bones. It included tips from two reliable CIs that Huerra was involved in methamphetamine distribution in San Angelo. The affidavit also described a San Angelo Police Department investigation that had identified Huerra as the supplier for several San Angelo methamphetamine dealers. Heathcock's affidavit further explained that, through "numerous investigative techniques," New Braunfels Police Officer Kristen Malish had determined that Huerra was distributing methamphetamine from his home. Malish also gave "credible and reliable information" that Huerra was storing a large amount of methamphetamine at his home and had negotiated to sell four ounces of it to a San Angelo narcotics dealer. Finally, Heathcock explained that San Angelo police had conducted a four-month surveillance operation and confirmed that Huerra was distributing methamphetamine from his home. The affidavit contained much more than "wholly conclusory statements" that "lack the facts and circumstances from which a magistrate can independently determine probable cause."[9] The affidavit was not bare bones, and a reasonable officer could have relied on this warrant in good faith.

Huerra asserts that the CIs' tips were stale and unreliable. Older tips are not stale if "the affidavit clearly shows a long-standing, ongoing pattern of

---

[7] *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) (brackets and citations omitted).

[8] *United States v. Robinson*, 741 F.3d 588, 597 (5th Cir. 2014) (citing *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994)).

[9] *Satterwhite*, 980 F.2d at 321.

criminal activity."[10]    This affidavit demonstrated Huerra's longstanding, ongoing pattern of methamphetamine distribution.  The tips were not stale.  The affidavit also contained facts that support a conclusion that the CIs' tips were reliable.  The CIs based their tips on personal knowledge, and both had given reliable information before.  It is inconsequential that San Angelo Detective Craig Thomason was the original source for the second CI's tip because "officers may submit warrant applications containing hearsay, including, of course, information provided by other officers."[11]  It makes no difference that the affidavit does not identify the source for the information obtained during the San Angelo Police Department investigation.    The affidavit contains the common-sense inference—an inference that officers and magistrates are free to make—that Heathcock's information came either from his direct participation in the investigation or from other officers who participated in the same investigation, two presumptively reliable sources.[12]  Finally, and contrary to Huerra's contention, the information from Malish was reliable.  Officers "may submit warrant applications containing [police-officer] hearsay."[13]   Heathcock's statements about Malish's investigative techniques are presumptively reliable because he based them on his "observation of [a] fellow officer[] participating in the same investigation."[14]  Malish's information was "particularly detailed," which can also establish the tip was reliable.[15]

---

[10] *United States v. Craig*, 861 F.2d 818, 822 (5th Cir. 1988) (quoting *United States v. Webster*, 734 F.2d 1048, 1056 (5th Cir. 1984)).

[11] *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 407 (5th Cir. 1989) (citation omitted).

[12] *See United States v. May*, 819 F.2d 531, 536 (5th Cir. 1987) (rejecting the argument that because an affidavit failed to identify the source of information uncovered during an investigation the information was necessarily unreliable).

[13] *Bennett*, 883 F.2d at 407.

[14] *May*, 819 F.2d at 536.

[15] *United States v. Laury*, 985 F.2d 1293, 1313 (5th Cir. 1993) (quoting *United States v. Jackson*, 818 F.2d 345, 349 (5th Cir. 1987)).

No. 16-11783

Furthermore, an officer could reasonably infer that Malish's "numerous investigative techniques" were a reliable source for her information.[16] Huerra has identified nothing that undermines the affidavit's reliability.

The fact that a magistrate issued the search warrant coupled with the apparent reliability of the supporting affidavit shows that a reasonable officer could have relied on this warrant in good faith. The good-faith exception applies, and the district court correctly denied Huerra's motion to supress.

**B**

Even if the good-faith exception did not apply, the affidavit gave the Texas district court a substantial basis for concluding that there was probable cause to search Huerra's home.

Probable cause exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place," considering "all the circumstances set forth in the affidavit."[17] Mindful that the Fourth Amendment's requirements "are practical and not abstract," a warrant's supporting affidavit "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion."[18] The "[t]echnical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area."[19] Accordingly, we must give "great deference" to the state district court's determination that probable cause existed.[20]

Officers had a fair probability of finding contraband or evidence of a crime at Huerra's home. As discussed above, the affidavit provided ample

---

[16] *See May*, 819 F.2d at 535-36 (concluding that a person is free to draw reasonable inferences from a warrant affidavit).

[17] *United States v. Wylie*, 919 F.2d 969, 974 (5th Cir. 1990) (quoting *United States v. Peden*, 891 F.2d 514, 518 (5th Cir. 1989)).

[18] *May*, 819 F.2d at 535 (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)).

[19] *Id.* (quoting *Ventresca*, 380 U.S. at 108).

[20] *Id.*

evidence that Huerra was distributing methamphetamine from his home. That evidence came from at least four reliable sources, spanned several months, and told a consistent story. The district court gave appropriate deference to the state district court's determination and correctly concluded that the state district court had a substantial basis for issuing the search warrant.

Because the good-faith exception applies or alternatively because there was a substantial basis for issuing the warrant, the district court did not err in denying Huerra's motion to supress.

### III

Huerra contends that his Sixth Amendment right to a fair and impartial jury was violated because the district court refused to dismiss the panel of potential jurors after one of them (Floyd) revealed that he was Huerra's parole officer. The Sixth Amendment guarantees a fair and impartial jury.[21] A jury is unfair and partial if the jurors "had such fixed opinions that they could not judge impartially the guilt of the defendant."[22] But "jurors need not . . . be totally ignorant of the facts and issues involved."[23] Jurors are considered fair and impartial so long as they "can lay aside [an] impression or opinion and render a verdict based on the evidence presented in court."[24]

The district court's actions before and after Floyd's disclosure ensured that Huerra's jurors would be fair and impartial. As voir dire began, the district court told the panel to presume Huerra's innocence. After Floyd offered that he was Huerra's parole officer, the district court immediately excused him. Subsequently, the district court gave the panel members an opportunity to

---

[21] *See Wylie*, 919 F.2d at 978.

[22] *Patton v. Yount*, 467 U.S. 1025, 1035 (1984).

[23] *Murphy v. Florida*, 421 U.S. 794, 799-800 (1975).

[24] *Id.* at 800 (quoting *Irvin v. Dowd*, 366 U.S. 717, 723 (1961)).

disclose whether, for any reason, they should not serve on the jury. The district court allowed defense counsel to ask the panel members whether Floyd's statement might affect their ability to be fair and impartial. In response, two panel members told the court that Floyd's statement might affect them, prompting the district court to remind the panel about the presumption of innocence, the burden of proof, and the jury's proper role in the case. Then the court asked these two panel members whether Floyd's statement might prevent them from being fair and impartial, and they said that it would. The district court then permitted defense counsel to ask whether anyone else felt the same, and a third panel member also said that Floyd's statement might have an impact. Defense counsel asked this question again, but no other panel members came forward. At the conclusion of voir dire, the district court excused all three panel members who said they were influenced by Floyd's revelation. These combined measures were adequate to protect Huerra's right to a fair and impartial jury.

There is no evidence that the district court's actions discouraged the panel members from disclosing whether Floyd's statement had affected them. To the contrary, the panel's behavior after the statement belies any concerns that they were too intimidated to disclose potential biases. Immediately after the district court reminded the panel about the presumption of innocence and asked panel members to come forward if Floyd's statement had affected them, a third panel member spoke up and explained that Floyd's disclosure had biased that panel member against Huerra. Later, other panel members casually offered their opinions on drug enforcement, laws against felon gun ownership, and government regulation of private gun ownership. This panel was not hesitant to disclose its potential biases.

The facts of this case are unlike those in *United States v. Rowe*,[25] when we ordered a new trial because of a district court's statements during voir dire.[26] A prospective juror in that case had told the court that she could not be fair and impartial.[27] The district court responded by accusing her of "refusing to put aside [her] personal opinions" and giving the "kind of answer which is clearly made up for the occasion [and] is not really great."[28] The judge said that he would place her on "February, March and April's panel to come back" and threatened that she would "be coming back again, and again, and again" until she could "figure out how to put aside [her] personal opinions and do [her] duty to [her] country as a citizen."[29] To a second panel member who made a similar disclosure, the judge said that it was "appalling" to "presume that people were guilty [just] because they were standing here charged with a crime."[30] The judge threatened to place this potential juror "back on the jury panel for February, March and April" and suggested that she "take [sic] some remedial constitutional inquiries in the meantime."[31] The judge concluded that it was "hard for [him] to believe somebody who stands up and says that they believe that because someone's sitting here that they're guilty already."[32]

The facts before us do not resemble those in *Rowe*. The district court in the present case took adequate and appropriate steps to ensure Huerra's right to a fair and impartial jury.

---

[25] 106 F.3d 1226 (5th Cir. 1997).
[26] *Id* at 1230.
[27] *Id*. at 1228.
[28] *Id*.
[29] *Id*.
[30] *Id*.
[31] *Id*.
[32] *Id*. at 1229.

No. 16-11783

**IV**

The district judge did not commit reversible error in concluding that Huerra was a career offender within the meaning of the Guidelines. Huerra failed to preserve this issue, and our review is for plain error. He has not satisfied the third and fourth plain-error requirements.

Typically, we "review[] the district court's application of the Sentencing Guidelines *de novo* and its findings of fact for clear error."[33] But we subject to plain-error review arguments that are raised for the first time on appeal.[34] To preserve an issue for appeal, the objection below "must fully apprise the trial judge of the grounds for the objection so that evidence can be taken and argument received on the issue."[35] But Huerra's conclusory objection merely claimed that he lacked "the requisite number" of past felony convictions for the career-offender enhancement. He did not identify which felony convictions the district court should ignore or explain why it should ignore them. Nor did he elaborate on these objections during the sentencing hearing. Huerra did not fully apprise the district court of the grounds for his objection. We therefore review this issue only for plain error.

To obtain relief under Federal Rule of Civil Procedure 52(b)—which embodies plain-error review—an appellant must show four requirements.[36] "First, there must be an error or defect" that the appellant has not "affirmatively waived."[37] "Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected

---

[33] *United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003).

[34] *Id.*

[35] *United States v. Musa*, 45 F.3d 922, 924 n.5 (5th Cir. 1995).

[36] *See Puckett v. United States*, 556 U.S. 129, 135 (2009).

[37] *Id.*

the appellant's substantial rights."[38]  Fourth and finally, even if the first three requirements are present, an appellate court may remedy the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings."[39]  Of course, "[m]eeting all four prongs is difficult, 'as it should be.'"[40]

As the Government concedes, Huerra has satisfied the first two plain-error requirements.  A person with "at least two prior felony convictions of either a crime of violence or a controlled substance offense" may be considered a career offender under the Federal Sentencing Guidelines.[41]  Two of Huerra's three prior felony convictions were for violating Texas Health & Safety Code § 481.112.  But this court has held that convictions under that Texas statute are not predicate offenses for purposes of the career-offender enhancement.[42]  Without those convictions, Huerra has only one prior felony conviction, so he is not a career offender under the Guidelines.  It was clear legal error for the district court to apply that enhancement.

The third plain-error requirement is absent, however, because the sentencing error did not affect Huerra's substantial rights.  First, the erroneous career-offender enhancement did not change Huerra's Federal Bureau of Prisons (BOP) security level.  The BOP bases an inmate's security level in part on a Criminal History Score.[43]  But the career-offender

---

[38] *Id.* (citation omitted).

[39] *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (brackets omitted).

[40] *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).

[41] UNITED STATES SENTENCING GUIDELINES MANUAL § 4B1.1 (2016).

[42] *See United States v. Hinkle*, 832 F.3d 569, 576-77 (5th Cir. 2016) (holding that past convictions under Texas Health & Safety Code § 481.112 cannot trigger the career-offender enhancement); *see also United States v. Tanksley*, 848 F.3d 347, 352 (5th Cir. 2017) (similar), *supplemented by*, 854 F.3d 284 (5th Cir.).

[43] *See* U.S. DEP'T OF JUSTICE FEDERAL BUREAU OF PRISONS, PROGRAM STATEMENT: INMATE SECURITY DESIGNATION AND CUSTODY CLASSIFICATION, No. P5100.08, Chapter 4, Pages 8, 16 (Sept. 12, 2006), https://www.bop.gov/policy/progstat/5100_008.pdf.

enhancement does not affect the Criminal History Score[44] and therefore did not affect Huerra's security level.  Second, since the error implicates only the shortest of three concurrent sentences, it did not affect Huerra's substantial rights.  The error does not affect the sentences for Counts 12 and 14: Huerra received a mandatory life sentence for Count 12, and the Guidelines sentence for Count 14 would have exceeded the 10-year statutory maximum even without the career-offender enhancement.  The only sentence that the error arguably affected was the sentence for Count 13.  But that 420-month sentence is the shortest of the three concurrent sentences.  When an error affects only the shorter of several concurrent sentences, a defendant's "failure to challenge his longer . . . sentence renders his challenge to his concurrent . . . [shorter] sentence irrelevant" under plain-error review since the defendant cannot show that the error affects his substantial rights.[45]  Unable to show that the error affects his substantial rights, Huerra has failed to establish the third plain-error requirement.

The fourth plain-error requirement is also absent.  First, a sentencing error that affects only the shorter of two or more concurrent sentences does not seriously affect the fairness, integrity, or public reputation of judicial proceedings.[46]  Moreover, Huerra's concurrent life sentence for Count 12 means that he "can show no meaningful benefit . . . from vacating this [shorter] sentence" on Count 13.[47]  Without that showing, we decline to exercise our discretion to grant plain-error relief and thus avoid "any unwarranted

---

[44] *See id.* at Chapter 4, Page 8.

[45] *United States v. Meshack*, 225 F.3d 556, 577 (5th Cir. 2000), *amended per curiam on reh'g in part*, 244 F.3d 367 (5th Cir. 2001), *overruled on other grounds*, *United States v. Cotton*, 535 U.S. 625 (2002) (citing *United States v. Phillips*, 210 F.3d 345, 351 n.5 (5th Cir. 2000)).

[46] *See id.*

[47] *Id.*

No. 16-11783

extension of the authority granted by Rule 52(b) [that] would disturb the careful balance it strikes between judicial efficiency and the redress of injustice."[48]

\*      \*      \*

For these reasons, we AFFIRM the judgment of the district court.

---

[48] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (original internal quotation marks and brackets omitted).

14