# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 16, 2022

Lyle W. Cayce
Clerk

No. 20-30778

United States of America,

*Plaintiff—Appellee*,

*versus*

Jamarvin K. Jackson,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:19-CR-200-1

Before Richman, *Chief Judge*, and Costa and Ho, *Circuit Judges*.
Per Curiam:[*]

Jamarvin K. Jackson conditionally pleaded guilty to armed robbery. He appeals the district court's denial of his motions to suppress evidence seized under various warrants. We affirm.

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30778

## I

A Family Stop and Shop convenience store in Monroe, Louisiana was robbed at gunpoint.  Monroe Police Department Detective Robert DaWayne Crowder investigated the case.  Detective Crowder identified Jackson as a suspect and obtained a warrant for his arrest.  The warrant said Jackson's address was 1401 Erin Street, Apartment 265.  The next day, Detective Crowder obtained a search warrant for that apartment and for a car registered to Jackson.  The same Louisiana magistrate signed the arrest and search warrants.

Affidavits by Detective Crowder supporting the warrants described his investigation.  Surveillance footage enabled Crowder to identify a suspected codefendant, James Blackson, who had called Jackson's phone number while surveying the store, minutes before the robbery took place.  Ballistics testing showed that the gun the robber had used at the Family Stop and Shop matched the gun used in another case in which Jackson was a suspect.  The victim in that case, Chrisheena Stewart, reported that Jackson owned several weapons, including a semi-automatic handgun like the one used in the robbery.  Detective Crowder's investigation also showed that Jackson physically resembled the suspect.  The search warrant affidavit said little about Jackson's connection to the targeted apartment, though it did note that a car registered to Jackson was parked outside the building.

Detective Crowder participated in the execution of the warrants.  In searching the apartment, officers found the same type of handgun as the one used in the robbery and a safe containing cash, a box of ammunition, and a black face mask like the one the robber had worn.  In Jackson's car, officers found more ammunition and a pair of used blue gloves matching those the robber had worn.  Following those searches, Detective Crowder obtained additional search warrants for Jackson's cell phone and a DNA sample.

No. 20-30778

After his indictment, Jackson moved to suppress all the evidence discovered under the warrants. The district court held a suppression hearing, during which Detective Crowder testified. He described the steps he had taken to connect Jackson with the apartment to be searched. Detective Crowder had determined that Jackson's driver's license listed his address as 1401 Erin Street, Apartment 265. He had interviewed Stewart, who knew Jackson and said Jackson was living with his girlfriend in that apartment. Detective Crowder had verified that Jackson's car was parked in front of the building, both traveling to the building himself and based on the report of an officer who patrolled the area.

The district court denied the motions to suppress. Jackson subsequently entered a conditional guilty plea to interference with commerce by robbery and to use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 1951(a) and § 924(c)(1)(A)(iii), respectively. The plea reserved Jackson's right to appeal the denial of his motions to suppress, and he has appealed to this court.

## II

The Fourth Amendment protects the right to be free from "unreasonable searches and seizures."[1] It provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[2] "The Fourth Amendment . . . is silent about how this right is to be enforced," however.[3] "To supplement the bare text," the Supreme

---

[1] U.S. Const. amend. IV.

[2] *Id.*

[3] *Davis v. United States*, 564 U.S. 229, 230-31 (2011).

3

Court adopted the exclusionary rule.[4]  When applicable, the exclusionary rule bars the introduction of evidence obtained through a Fourth Amendment violation.[5]  The exclusionary rule intends "to prevent, not to repair" a breach.[6]  "Exclusion is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by an unconstitutional search."[7]  The "sole purpose" of exclusion is to deter future Fourth Amendment violations.[8]

To exclude evidence, deterrence is necessary, not sufficient.[9]  "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs."[10]  Exclusion "almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence."[11]  In light of this "costly toll upon truth-seeking and law enforcement objectives," exclusion "has always been our last resort, not our first impulse."[12]

This cost-benefit analysis underlies the good faith exception to the exclusionary rule.[13]  The exception recognizes that "the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at

---

[4] *Id.* at 231.

[5] *Id.*

[6] *Elkins v. United States*, 364 U.S. 206, 217 (1960).

[7] *Davis*, 564 U.S. at 236 (quoting *Stone v. Powell*, 428 U.S. 465, 486 (1976)).

[8] *Id.*

[9] *Hudson v. Michigan*, 547 U.S. 586, 596 (2006).

[10] *Davis*, 564 U.S. at 237.

[11] *Id.*

[12] *Herring v. United States*, 555 U.S. 135, 140-41 (2009) (internal quotations omitted).

[13] *United States v. Ganzer*, 922 F.3d 579, 585 (5th Cir. 2019).

issue."[14]  When police have an "objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way."[15]

The good faith exception usually applies to evidence obtained through a warrant.  "[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."[16]  "[W]hen the police conduct a search in 'objectively reasonable reliance' on a warrant later held invalid," the good faith exception applies and the prosecution may introduce the evidence that the search uncovered.[17]  "The error in such a case rests with the issuing magistrate, not the police officer, and 'punish[ing] the errors of judges' is not the office of the exclusionary rule."[18]

There are some cases in which officer reliance is not objectively reasonable, however.  The good faith exception does not apply in the following four circumstances: (1) "the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth"; (2) "the issuing magistrate/judge wholly abandoned his or her judicial role"; (3) "the warrant is based on an affidavit so lacking in indicia of probable cause as to

---

[14] *Davis*, 564 U.S. at 238 (quoting *Herring*, 555 U.S. at 143).

[15] *Id.* (internal quotations and citations omitted).

[16] *United States v. Leon*, 468 U.S. 897, 922 (1984) (internal quotations and citations omitted).

[17] *Davis*, 564 U.S. at 238-39 (quoting *Leon*, 468 U.S. at 922).

[18] *Id.* (quoting *Leon*, 468 U.S. at 916).

render official belief in its existence entirely unreasonable"; or (4) "the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid."[19]

When examining a district court's ruling on a motion to suppress, we review questions of law de novo and factual findings for clear error.[20] The sufficiency of a warrant and the reasonableness of an officer's reliance are legal questions.[21] We view the evidence in the light most favorable to the party that prevailed in the district court, here, the Government.[22] If "any reasonable view of the evidence" supports the district court's denial of a suppression motion, we uphold that decision.[23]

We apply a two-step test when determining whether to suppress evidence obtained under a warrant. "[F]irst, we ask whether the good faith exception to the rule applies, and second, we ask whether the warrant was supported by probable cause."[24] Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular

---

[19] *United States v. Payne*, 341 F.3d 393, 399-400 (5th Cir. 2003) (quoting *United States v. Webster*, 960 F.2d 1301, 1307 n.4 (5th Cir. 1992) (per curiam)).

[20] *United States v. Gentry*, 941 F.3d 767, 779 (5th Cir. 2019).

[21] *United States v. Allen*, 625 F.3d 830, 834 (5th Cir. 2010).

[22] *United States v. Ganzer*, 922 F.3d 579, 583 (5th Cir. 2019).

[23] *United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018) (quoting *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc)).

[24] *United States v. Robinson*, 741 F.3d 588, 594 (5th Cir. 2014).

place."[25]   "If the good-faith exception applies, we need not reach the question of probable cause."[26]

## III

Jackson makes four arguments on appeal.  First, he contends that the good faith exception does not encompass the defects in the search warrant affidavit for the apartment.  Second, he claims that the good faith exception does not apply because Detective Crowder misled the magistrate.  Third, Jackson raises new challenges regarding the search of his car and cell phone. Finally, he maintains that we should exclude the evidence obtained from the search of his cell phone and DNA under the fruit of the poisonous tree doctrine.

## A

We begin with Jackson's argument that the good faith exception does not cover the search warrant affidavit for the apartment.  Jackson claims that the affidavit failed to establish a nexus between the apartment and the evidence sought because it did not specify Jackson's connection to the apartment.  In his view, this omission renders the affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[27]

To establish probable cause, "facts must exist in the affidavit which establish a nexus between the house to be searched and the evidence

---

[25] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[26] *United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999).

[27] *United States v. Leon*, 468 U.S. 897, 923 (1984) (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (POWELL, J., concurring in part)).

sought."[28] It is true that the affidavit here contains limited facts connecting Jackson to the apartment. However, it is not completely silent on this score. The affidavit states that a car registered to Jackson was parked in the lot outside. It is no doubt plausible that a parked car could indicate Jackson lived in the building.[29] The link between Jackson's car and the apartment may or may not sustain a determination of probable cause, but we cannot say that indicia are so lacking as to render official belief in its existence entirely unreasonable.

A number of our sister circuits have applied the good faith exception in similar circumstances.[30] For example, in *United States v. Procopio*,[31] the First Circuit applied the exception to a case in which the affidavit failed to explain how the officer knew that the apartment to be searched was the defendant's address.[32] The officer's investigation gave him "ample basis"

---

[28] *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982).

[29] *See United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987) (holding that judges "may draw reasonable inferences" in assessing probable cause).

[30] *See, e.g.*, *United States v. McKenzie-Gude*, 671 F.3d 452, 458-60 (4th Cir. 2011) (applying the good faith exception to a case in which the affidavit "failed to provide the requisite nexus between McKenzie-Gude and the target residence" because officers "acted with the requisite objective reasonableness when relying on uncontroverted facts known to them but inadvertently not presented to the magistrate"); *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998) (applying the good faith exception to a case in which the affidavit allegedly failed "to specify how the affiant linked the residence to [the defendant]" because the affidavit "described the location of the Tennessee Residence with such particularity that a common sense inference is that the affiant visited the premises himself and presumably either observed Shutters in the residence, or determined through investigation that Shutters frequented the premises"); *United States v. Procopio*, 88 F.3d 21, 28 (1st Cir. 1996) (applying the good faith exception to an affidavit in which the "only omission was the failure to explain how the agent . . . knew that '81 Intervale' was 'Kiley's address'").

[31] 88 F.3d 21.

[32] *Id.* at 28.

for believing that the defendant lived there, although "none of this information was included in the warrant application."[33]  The First Circuit held that the omission fell well within the good faith exception.[34]  "Whether or not this is a defect in the application," the court said, "it is hardly blatant, nor is there any suggestion (or basis for a suggestion) of actual bad faith."[35]  The First Circuit recognized that "[t]he focus in a warrant application is usually on whether the suspect committed a crime and whether evidence of the crime is to be found at his home or business."[36]  Although the suspect's address is not unimportant, "it is easy to understand how both the officer applying for the warrant and the magistrate might overlook a lack of detail on a point often established by the telephone book or the name on a mailbox."[37]

In this case, Detective Crowder's investigation gave him ample basis for linking Jackson to the apartment.  He determined that Jackson's driver's license used the address.  He conducted an interview corroborating that Jackson lived there.  He confirmed that Jackson's car was parked outside the building.  Although the affidavit did not include much of this information, it did state the location of Jackson's car.  We perceive no bad faith in the mere omission from the affidavit of an officer's thorough investigative efforts on this relatively basic point.

**B**

We next address Jackson's challenge regarding alleged misrepresentations in the affidavits.  Jackson argues that the good faith

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

[37] *Id.*

exception does not apply because the magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."[38]  To impeach the warrant, Jackson "must not only show that there was a knowing or reckless falsehood; he must also show 'that without the falsehood, there would not be sufficient matter in the affidavit to support the issuance of the warrant.'"[39]

Jackson has not made this showing.  He contests the statement that he and the suspect had similar appearances.  But photographic evidence shows that Jackson's build resembles that of the suspect.  He challenges the representations that Blackson, the suspected codefendant, was on the phone with Jackson.  But Blackson's cell phone records establish that he had dialed Jackson's number, and Jackson offers no evidence to suggest he was not the one speaking.

Jackson also disputes the assertion that Stewart, the victim of the allegedly related crime, claimed to have seen "several weapons" in Jackson's possession.  At the suppression hearing, Detective Crowder said that Stewart had described one gun.  He did not speak to whether she had discussed other weapons.  Even if we omitted the claim regarding several weapons, the other material in the affidavit—including the ballistics test results and Stewart's report of the gun—establishes probable cause.[40]  Thus, we do not perceive a knowing or reckless falsehood in any of the challenged statements sufficient

---

[38] *United States v. Leon*, 468 U.S. 897, 923 (1984).

[39] *United States v. Robinson*, 741 F.3d 588, 595 (5th Cir. 2014) (quoting *United States v. Davis*, 226 F.3d 346, 351 (5th Cir. 2000)).

[40] *See United States v. Davis*, 226 F.3d 346, 352 (5th Cir. 2014).

to undermine the warrants, especially when viewing the record in the light most favorable to the Government.[41]

## C

On appeal, Jackson raises two new arguments. Federal Rule of Criminal Procedure 12 provides that suppression motions "must be raised by pretrial motion."[42] If the motions are not made before trial, they are "untimely," though a court may consider them "if the party shows good cause."[43] We review Jackson's untimely suppression arguments for plain error.[44] That is, Jackson must demonstrate a "clear or obvious" error that affected his substantial rights, ordinarily one that "'affected the outcome of the district court proceedings.'"[45]

Jackson's first new challenge concerns the magistrate's conduct in issuing the warrant to search his car. He contends that the good faith exception does not apply because the magistrate "wholly abandoned his judicial role" in approving the warrant.[46] Jackson has not met his burden to show plain error. He "does not so much as allege that [the magistrate] was biased."[47] He says only that the affidavit drew no explicit connection between Jackson's car and the items to be seized. It is not clear or obvious that the magistrate wholly abandoned his role in issuing a warrant to search

---

[41] *See United States v. Jarman*, 847 F.3d 259, 265-66 (5th Cir. 2017).

[42] FED. R. CRIM. P. 12(b)(3).

[43] FED. R. CRIM. P. 12(c)(3).

[44] *See United States v. Vasquez*, 899 F.3d 363, 372-73 (5th Cir. 2018).

[45] *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

[46] *United States v. Leon*, 468 U.S. 897, 923 (1984).

[47] *United States v. Cherna*, 184 F.3d 403, 408 (5th Cir. 1999).

Jackson's car, which Jackson plausibly could have used to store items related to the robbery.[48]  Because Jackson has not demonstrated plain error, we reject this argument.

Jackson's second new challenge concerns the search of his cell phone. He contends that the good faith exception does not apply because the affidavit did not provide probable cause to search different categories of information on his phone.[49]  Setting aside the question of error, Jackson shows no effect on his substantial rights.[50]  He has not identified any information from the search that he wishes to exclude, let alone any information that would affect the outcome of the district court proceedings.[51] Because Jackson has not demonstrated plain error, we reject this argument too.

## D

Finally, we address Jackson's argument—one he did raise below— regarding the fruit of the poisonous tree doctrine.  In general, "the exclusionary rule prohibits the introduction at trial of all evidence that is derivative of an illegal search, or evidence known as the 'fruit of the poisonous tree.'"[52]  Jackson contends that we should exclude evidence

---

[48] *Cf. United States v. May*, 819 F.2d 531, 537 (5th Cir. 1987) (assessing probable cause by "[t]esting the affidavit in a commonsense fashion, allowing for reasonable inference, and giving due deference to the judicial officer who issued the warrant").

[49] Jackson bases this argument on our panel decision in *United States v. Morton*, which we vacated to rehear the case en banc.  984 F.3d 421 (5th Cir.), *vacated and reh'g en banc granted*, 996 F.3d 754 (5th Cir. 2021).  We have not yet issued our en banc ruling.

[50] *See Puckett*, 556 U.S. at 135.

[51] *See id.*

[52] *United States v. Singh*, 261 F.3d 530, 535 (5th Cir. 2001) (quoting *United States v. Grosenheider*, 200 F.3d 321, 327 (5th Cir. 2000)).

No. 20-30778

obtained from the cell phone and DNA searches because probable cause for those searches derived from the illegal search of the apartment and car.

As explained above, Jackson's challenges to the search of the apartment and the car lack merit. Accordingly, we do not exclude the evidence from these later searches.[53]

\* \* \*

We AFFIRM the district court's judgment.

---

[53] *See United States v. Payne*, 341 F.3d 393, 402 (5th Cir. 2003).